LIFE & CASUALTY INS. CO. OF TENNESSEE v. ANDREWS.*

(Division B. Feb. 6, 1928. Suggestion of Error Overruled March 5, 1928.)

[115 So. 548. No. 26797.]

1. INSURANCE. *Presumption of law is against suicide of one insured under casualty policy, but presumption may be overcome by evidence.*

Presumption of law is against suicide of one insured under casualty policy, but such presumption is not conclusive; it is only *prima facie* and may be overcome by evidence.

2. INSURANCE. *Where only reasonable inference to be drawn from evidence is that insured committed suicide, question is one of law for court.*

To justify court in taking issue of suicide from jury and directing verdict in favor of suicide, evidence going to establish suicide must be so strong that no other reasonable inference can be drawn than that of suicide, but if evidence is such that two reasonable inferences can be drawn therefrom, one in favor of suicide and the other against suicide, then it is question for jury.

3. INSURANCE. *Evidence held to entitle defendant to directed verdict on ground of suicide of insured.*

In action on casualty insurance policy containing clause that if insured died by his own hand within year insurer's liability

was limited to amount of premiums paid, evidence showing posi-
tion of insured's body, position of pistol in or near his right
hand on bed where he was found dead, nature of wound through
his head, and showing that insured left note in which he said
that he was world weary because the only girl he ever loved
had gone back on him, *held* to show as matter of law that in-
sured committed suicide within year, and defendant tendering
premiums paid was entitled to directed verdict.

---

*Corpus Juris-Cyc References: Accident Insurance, 1CJ, p. 495, n.
12, 13; p. 511, n. 34. On presumption and burden of proof as to suicide
of insured, see annotation in 4 L. R. A. (N. S.) 637; 42 L. R. A. (N. S.)
635; 50 L. R. A. (N. S.) 1008; 14 R. C. L. 1235; 3 R. C. L. Supp. 362;
6 R. C. L. Supp. 869. As to right of insurer to direct verdict on issue
of suicide, see annotation in 37 A. L. R. 171.

Appeal from circuit court of Lowndes county.

Hon. J. I. Sturdivant, Judge.

Action by Grover Cleveland Andrews against the Life
& Casualty Insurance Company of Tennessee. From a
judgment for plaintiff, defendant appeals. Reversed
and rendered.

*Frierson & Weaver,* for appellant.

The sole question was whether the deceased committed
suicide. *Supreme Lodge Knights of Honor* v. *Fletcher,*
78 Miss. 377, 29 So. 523, controls and is in point. "We
think the evidence of intentional self-murder, on the case
shown by this record, overwhelming. *The condition of
the body, the wound, and the pistol in the hand would be
enough.*" We respectfully urge that the foregoing de-
cision and the facts on which it was based, applied to the
facts in the instant case, leave us with the conclusion
that insured committed suicide in the instant case. *New
York Life Ins. Co.* v. *Myers,* 109 So. 30, sustains a find-
ing of death by accident, but the facts and circumstances
in the instant case can *only* admit a finding of suicide. A
case in point is *Webster* v. *New York Life Insurance
Co.,* 160 La. 854, 107 So. 599. We will notice some of the

Mississippi cases. See *Sup. Lodge K. of P.* v. *Fletcher,* 78 Miss. 379, 29 So. 523; *Fletcher* v. *Sov. Camp W. O. W.,* 81 Miss. 249, 32 So. 923; *Mass. Protective Ass'n* v. *Crawford,* 137 Miss. 876, 102 So. 171; *New York Life Ins. Co.* v. *Myers,* 109 So. 30. We respectfully submit that the lower court, in view of the uncontradicted evidence in the case, the physical facts, and the note showing state of mind and motive should have granted the peremptory instruction to find for the defendant, and that the case should be reversed, and judgment here for defendant.

The rule of law is as hereinbefore stated, that the presumption is against suicide in an ordinary life policy or even in an accident policy. But the rule of law also in reference to an accident policy is that the burden of proof is on the beneficiary or claimant to prove that the death was by accident. See *U. S. Casualty Company of New York* v. *Malone,* 126 Miss. 73, 87 So. 896.

*Lincoln & Lincoln,* for appellee.

Counsel for appellant quote case of *Knights of Honor* v. *Fletcher,* 78 Miss. 379, 29 So. 523. This case is not a, parallel case with case at bar. In the Fletcher case cited as above, there was every fact to show that deceased was contemplating suicide, but in case at bar, there is not one scintilla of circumstance to indicate that insured was tired of life and contemplated self-murder, yet counsel for appellant contend that the facts indicating suicide are stronger in the case before this court than the facts in the Fletcher case.

This court is familiar enough with the use of firearms, to know that to place a pistol to head of a person and fire the same and the ball to enter the head where it is described as entering the head of insured, that the arm cannot be extended far enough from the head to hold a pistol at a distance that when fired it will not powder burn the face and head. This is a physical fact which cannot be disputed, and is a fact which is overwhelming-

ly against any theory of suicide on the part of the insured. *New York Life Insurance Co.* v. *Meyers*, fits this case absolutely, 109 So. 530. The record in this case is short and we respectfully 'ask this Honorable Court to carefully peruse it. The jury in the court below heard all the evidence and rendered a verdict in favor of appellee in the sum of two thousand dollars, and we respectfully submit to this court that this case should be affirmed and the judgment as given by the jury in the court below stand.

Argued orally by *Robin Weaver,* for appellant, and *B. A. Lincoln,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellee brought this action in the circuit court of Lowndes county against appellant to recover the sum of two thousand dollars on a casualty insurance policy issued by appellant to John V. Andrews, the son of appellee, in which policy appellee was named as beneficiary. There was a trial, and verdict and judgment for appellee, from which judgment appellant prosecutes this appeal.

On March 20, 1926, appellant issued and delivered to John V. Andrews a casualty policy naming his father, appellee, as the beneficiary therein. The principal sum named in the policy was one thousand dollars. The policy provided for the payment to the beneficiary double that amount in case of the accidental death of the insured. While the policy was in force, the insured died from a pistol shot wound. The policy contained the following clause:

"If within one year from the date of issue of this policy the insured shall, whether sane or insane, die by his own hand, the liability of the company shall be limited to the amount of the premiums paid hereon."

The insured died within three months after the policy was issued.

Appellant defended the action upon the alleged ground that the insured came to his death by suicide, and that, therefore, under the suicide clause of the policy, appellant was not liable to the beneficiary therein, except for the premiums paid on the policy, amounting to twelve dollars and eighty-three cents, which appellant tendered to appellee, which tender appellee declined.

The only error assigned and argued by appellant is that the court erred in refusing its request for a directed verdict. By agreement of the parties the evidence in the case was embodied in writing and made a part of the record for the purposes of this appeal. The evidence was brief. We think it probably better to set it out in full rather than undertake to state its substance. It follows, leaving off such formal parts as are deemed immaterial:

### EVIDENCE ON BEHALF OF APPELLEE.

"Grover Cleveland Andrews, plaintiff in the said cause, who testified as witness for himself at the trial of the said cause as follows: That he is the father of John V. (or Vardaman) Andrews, and the beneficiary named in the policy No. 59079, in the Life & Casualty Insurance Company of Tennessee, which said policy is dated March 10, 1926, and provides for payment of one thousand dollars in case of death from natural causes within the terms of the policy and the payment of two thousand dollars in case of death by accident within the terms of the policy. The policy was further filed as an exhibit to the declaration and was introduced as exhibit to the testimony of said plaintiff. Affiant testified further that the said insured, John V. Andrews, was living on the place of and working with Mr. Arrington Johnson at the time of his death, and that on the morning of the death of the said insured, affiant and affiant's wife, the mother of insured, were called to the home of Mr. Arrington Johnson, and that the date of the death of the said insured was June

15, 1926. When they arrived there they found Dr. Chandler, John Brooks, and Arrington Johnson in the room and the body of deceased lying on the bed in the room with his clothing on, but the blood had been washed from the face of deceased and there was a bullet wound entering the right temple and coming out behind the left ear on the body of the said insured. Affiant had seen his son frequently during the preceding days and said son was cheerful and bright and in his normal state of mind. Affiant testified also on cross-examination that the note was given to himself and wife after she and affiant reached the scene of the death of the insured, and the affiant further testified that the said note did contain expressions stating in about the words, 'I am world weary,' and also that the note did contain the expression in the words or about the words, 'The only girl I ever loved has gone back on me.'

"Affiant did testify that the pistol was sent to affiant which was an automatic pistol. Affiant further testified that he did not know at the time he was giving this testimony at the trial where the said note was; that he and his wife had not preserved it and could not produce it; that he had offered it to the agent of the company before the trial for inspection, but the agent who called for it had gone and it was lost. No powder burns on the body of the deceased.

"Affiant further testified that the proper death proofs had been made and submitted to the defendant, the insurance company, and that payment of the claim of insurance had been declined, and also the insurance company had made and did then make in open court tender of the amount of the premiums, which amounted to twelve dollars and eighty-three cents, which had been paid on the policy, and that these premiums were declined and refused previously and also in open court at the time of the trial by affiant as the beneficiary under the said policy, and that the tender previously made and also at the trial of the case was made by the company on their claim

that the death of the insured was by suicide and that the terms of the policy provided that in case of such death by suicide within a period of twelve months after the date of the policy, the company should be liable only for a refund of the premiums paid and the premiums were declined on this ground.

"Hazel Gilliam, witness for the plaintiff, testified as follows: That she is of the age of seventeen years and lives in Lowndes county, Miss., and that Vardaman Andrews had been going with her and paying her attention for some time; that about six months prior to the time of his death he had proposed marriage to her and that she had stated that she was too young to marry and that he had said he would wait. Witness saw the said Vardaman Andrews on the morning of June 15th, before his death, as he was returning from Dr. Chandler's, where he had been for some medicine, and was going back to his work with Mr. Arrington Johnson. She saw him about seven or seven-thirty o'clock. He seemed bright and cheerful and normal at that time. At the time she agreed that she would go with him that night to 'Camp Rest-a-While' which is a camp about five miles south of Columbus on the Macon road and is a pleasure resort, and they also made an engagement, the one to the other, that they would meet at New Salem at a singing on the following Sunday, and also that they would meet at a Fourth of July picnic on the 4th of July. Affiant testified that the proposal for marriage and her rejection on the ground of youth was about six months prior to the date of the affidavit. She read the note found in the deceased's room, and her name, Hazel Gilliam, was mentioned as the only girl he had ever loved.

"Miss Edith Gilliam, the elder sister of Hazel Gilliam, testified for the plaintiff that she had seen the deceased on the morning of the date of his death, prior to his death, and that he seemed in good spirits and bright and normal and that she noticed nothing unusual about him.

"Bud Gilliam, witness for the plaintiff, testified that he is the father of Hazel Gilliam and that he had seen the deceased on the morning of the death of the deceased, prior to his death, and he came by his home, and that he seemed to be in normal and cheerful frame of mind and nothing unusual about him.

"Jim Loftis, who, being duly sworn, testified for the plaintiff as follows: That he lives near to Dr. M. S. Chandler and saw John V. Andrews on the morning of June 15th, when he came to Dr. Chandler's and talked with him for a short while; that he had known John V. Andrews for some time and had seen him very frequently and that he did not appear different on this occasion from the times on other occasions when he had seen him; that he appeared normal and cheerful and in his usual frame of mind.

"Guy C. Jamison, who being first duly sworn, testified as follows for the plaintiff: That he, witness, is an undertaker in Columbus, Miss., and connected with the firm of Gunter Bros., Undertakers, and that he prepared the body of John V. Andrews for burial after his death, on or about the 15th of June, 1926, and did not discover or see any powder burns on or about the face or temple of the said John V. Andrews. Witness also prepared and delivered to the father of the said John V. Andrews a regular undertaker's death proof."

EVIDENCE ON BEHALF OF APPELLANT.

"Thereupon the defendant introduced as a witness, first, Arrington Johnson, who, having been duly sworn, testified for the defendant as follows: That John V. Andrews, also known as Vardaman Andrews, the insured in a policy on which the suit was based, was, at and prior to the time of his death, living on the premises of and working with affiant on lands in Lowndes county, Miss., west of Columbus, Miss.; that the said Vardaman Andrews was employed by affiant and for a while had a room at the house of affiant and later in a house on the

premises a short distance from the house of affiant and
back of the house of affiant; that on the morning of the
death of the said Vardaman Andrews the said Varda-
man Andrews had gone with cans of milk out to the grav-
el road and thence on to 'Dr. Chandler's for some medi-
cine for affiant's child and had returned, and affiant saw
the said Vardaman Andrews come in and told the said
Vardaman Andrews to go into the house and get his
breakfast, which had been saved for him. Affiant was at
the time working on a mowing machine, repairing it and
getting it ready to start to cutting hay, and assisting him
was a young man, John Brooks, and they were working
near the house or room which was occupied by the said
Vardaman Andrews; that because the said Vardaman
Andrews delayed in coming and joining them in making
ready this mowing machine that affiant asked John
Brooks where he had gone, and John Brooks stated that
he had seen him 'go into his room about thirty or forty
minutes ago.' Affiant then started towards the front
door of the house in which the room of Vardaman An-
drews was, and as he got at or near the front door he
heard a pistol fire. That he remembered that deceased
had asked for the privilege of shooting some squirrels
near this house a week or more before, and affiant had
told him in shooting around the house to be careful.
Affiant walked up, and on opening the door said, to
warn deceased, 'Look out; I am not a squirrel.' He
went into the room, found the said Vardaman Andrews
lying diagonally across the bed with his face down, rather
sideways, with his feet projecting off the edge of the
bed, with a bullet hole that had pierced his right temple
and had gone out of his head behind his left ear, and this
wound showing from the right temple as he approached
him, and the pistol clutched in his right hand. Affiant
put his hands on the said Vardaman Andrews and shook
him and discovered that he was dead. He then called
the said John Brooks, who was near by, and the said
John Brooks came in, and he and John Brooks called

immediately for Dr. Chandler, and Dr. Chandler came, and deceased was not moved and nothing had been done to his body up to the time Dr. Chandler got there. After Dr. Chandler's arrival he, Dr. Chandler, suggested that the boy should be cleaned up of the blood before his father and mother came. Dr. Chandler took the pistol out of the hands of the deceased and handed it to affiant. It was an automatic pistol. Affiant placed the pistol on a table in the room, which sat about the middle of the room, and later sent the pistol to deceased's father. As affiant put the pistol down on the table, he discovered a note on the table. He picked up the note and read it and handed it to Dr. Chandler and also to John Brooks. Affiant does not remember all the note, but remembers that it began by saying, 'I am world weary.' It also had the expression in it, 'The only girl I ever loved has gone back on me.' The note was signed, 'Vardaman Andrews.' The note was afterwards given to the mother and father of deceased when they arrived. Vardaman Andrews was in his usual cheerful state of mind on the morning of his death, and nothing unusual was observed in his conduct.

"The mother and father of the deceased arrived probably an hour or more after the death of their son. No one else beside affiant, Dr. Chandler and John Brooks were in or about the house, or in the room, until the arrival of the parents. The death occurred on or about the 15th day of June, 1926.

"John Brooks testified as follows: That on or about the 15th day of June, 1926, at the time of the death of John V. Andrews, or Vardaman Andrews, affiant was working for Arrington Johnson on his premises about five or six miles west of Columbus, Miss., in said county, and that the said John V. or Vardaman Andrews, on the morning of the death of the said Andrews, had gone to carry some milk to the gravel road, where it would be picked up by a delivery truck and hauled to town, and the said Andrews had afterwards gone to Dr. Chandler's and had returned to the home of Mr. Arrington Johnson, and

that the said Andrews had gone into the house for his breakfast, and that affiant saw the said Andrews come out of the house of Arrington Johnson and go into the small house that was occupied by the said Vardaman Andrews and had been occupied by him only a few days. Prior to that time he had lived in the house of the said Mr. Arrington Johnson. Affiant was assisting Mr. Johnson in repairing a mowing machine to get it ready to begin cutting some hay, and they were expecting the said Vardaman Andrews to come out and join them at this repair work. Mr. Johnson asked about the said Andrews and why the delay. Affiant had seen the said Andrews go into his room through the back door of the same and told Mr. Johnson that he had seen Andrews come out of the kitchen and go into the back of his house about thirty or forty minutes before. Mr. Johnson then approached the house occupied by the said Vardaman Andrews from the front side, and about the time he got at or near the door a pistol fired. The report of the pistol was heard by affiant. Mr. Johnson went on into the house and a few minutes later called to affiant to come. When affiant got into the house no one was there except Mr. Johnson and Vardaman Andrews, lying diagonally across the bed, practically on his face, but with his face out toward the right side and a pistol wound in his right temple, which had gone through the right temple and out behind the left ear, and a pistol clutched in his right hand, and his feet projected slightly over the edge of the bed. Before anything was done to the body of Vardaman Andrews, Dr. M. S. Chandler was called and he was the next to arrive and come into the room. After Dr. Chandler got into the room he took the pistol out of the right hand of the deceased and handed it to Mr. Johnson. Mr. Johnson laid the pistol on a table which was near the middle of the room. Mr. Johnson discovered a note lying on the table as he placed the pistol on the table, and the note was signed, 'Vardaman Andrews.' He read the note, and Dr. Chandler read the note, and affiant read the note.

Affiant remembers distinctly that the note began by saying, 'I am world weary and tired of living,' and it also stated, 'the only girl I ever loved has gone back on me.' The note contained several other sentences and they were all along the same line as expressing weariness of life and trouble. Afterward, the blood was cleaned off the face and body of the deceased by affiant and Dr. Chandler and Mr. Johnson before the arrival of the mother and father, which was an hour or more later. Affiant further testified that nothing unusual was noticed about the said Vardaman Andrews that morning before he had started off with the milk.

"Dr. M. S. Chandler testified as follows: That affiant is a regularly licensed practicing physician of Lowndes county, Miss., in the western part of the county and has been practicing for many years; that on or about the morning of June 15, 1926, about seven or seven-thirty o'clock, John V. (or Vardaman) Andrews came to the house of affiant and asked for some medicine for the little child of Mr. Arrington Johnson, and affiant sent the medicine to Mr. Johnson by the said Vardaman Andrews. He seemed cheerful and in his normal condition. Affiant had known the said Vardaman Andrews for some time and had seen him on various occasions and knew that he was working for Arrington Johnson. About eight, or a little later, affiant was summoned to come to the house of Mr. Arrington Johnson, and, on arrival there, affiant was shown into a room in a small house on the premises of and at the back side of the house of Arrington Johnson. In the room at the time were Arrington Johnson and John Brooks. The dead body of the said Vardaman Andrews was lying diagonally across the bed with face downward, except the face turned out to the right side, and a bullet wound in the right temple and the bullet had come out just to the back of the left ear. The said Vardaman Andrews was dead when affiant arrived at the scene. The pistol was near the right hand of the deceased lying on the bed. Affiant took the pistol

and handed it to Mr. Arrington Johnson, who placed it on a table at or near the center of the room. As the said Arrington Johnson laid the pistol down, the said Arrington Johnson picked up a note from the table, which note was signed, 'Vardaman Andrews.' The note stated that the writer was 'world weary,' and also stated that 'the only girl I ever loved has gone back on me,' and other statements in the note along similar lines. The note was read by affiant and the other parties in the room and was given to the mother and father of deceased on their arrival. The mother and father of deceased arrived about an hour later.

"The blood was washed from the face and body of the deceased as best it could be done by the three who were in the room before the arrival of the parents. Witnesses testified on cross-examination that they saw no powder burns on the face of deceased."

The presumption of law is against suicide, but such presumption is not conclusive; it is only *prima facie;* it may be overcome by the evidence. In order, however, to justify the court in taking the issue of suicide, or not, from the jury, and directing a verdict in favor of suicide, the evidence going to establish suicide must be so strong as that no other reasonable inference can be drawn therefrom than that of suicide. If the evidence is such, although it is without conflict, that two reasonable inferences can be drawn therefrom, one in favor of suicide and the other against, then, plainly, it is a question for the jury. On the other hand, if only one reasonable inference can be drawn from the evidence and that is suicide, then there is no question for the jury; there is only a question of law for the court.

Viewing the evidence in this case as proving every material fact which it either proves or tends to prove in favor of appellee, the conclusion, we think, is inescapable that the insured, John V. Andrews, committed suicide. All the evidence points in that direction. The surrounding facts and circumstances, the note he left in

which he said he was world weary because "the only girl I ever loved has gone back on me," the position of his body, the position of the pistol in or near his right hand on the bed where he was found dead, the nature of the wound through his head, all meant suicide, and nothing else.

The following language of the court in *Knights of Honor* v. *Fletcher,* 78 Miss. 377, 29 So. 523, is applicable here:

"The condition of the body, the wound and the pistol in the hand, would be enough. The pressure of the evidence for the defendant excludes all but conjectures of the most imaginative type of possible accident or murder from another hand, and the plaintiff cannot splint up the loose joints of mere conjecture with even plausible possibilities, and these the law does not require the defendant to negative in proof."

It follows from these views that the trial court should have directed a verdict for appellant.

Reversed, and judgment here for appellant.

*Reversed.*