JEFFERSON STANDARD LIFE INS. CO. v. JEFCOATS.

(Division A. Oct. 17, 1932.)

[143 So. 842. No. 30122.]

Welch & Cooper, of Laurel, and Watkins, Watkins & Eager, of Jackson, for appellant.

664

G. W. Hosey, of Laurel, for appellee.

666

**McGowen, J.,** delivered the opinion of the court.

The appellee, Mrs. Jefcoats, as the widow of George Jefcoats, brought an action for the recovery on an insurance policy issued on February 1, 1930, to George Jefcoats, which policy contained a double indemnity clause; the amount of the ordinary life policy being for one thousand dollars and the amount of the double indemnity being for one thousand dollars. George Jefcoats, the insured, was killed by a passenger train in the city of Laurel, on the night of October 7, 1931.

To the declaration, the appellant (the insurance company) filed the plea of general issue, and also notice thereunder of affirmative defense, suicide or self-destruction on the part of the insured.

The case was submitted to a jury resulting in a verdict for the full amount, two thousand dollars, sued for, in favor of the appellee, from which the insurance company appeals to this court.

The essential facts are these: The engineer of the Southern Railway Company testified that a step of the pilot of the engine pulling a passenger train struck the deceased just inside the city limits of Laurel, Mississippi, on the night of October 7, 1931, when the train was proceeding in a northerly direction, and that he (the engineer) blew his whistle for the various street crossings; that it was misting rain; the train was moving at about twenty miles per hour, and that he saw the deceased, Jefcoats, on the track about one hundred and fifty feet ahead, or north, of him, at the time he was blowing the whistle; that his bell had been ringing for some time, and, as he drew near, he realized that the man was not moving, and he therefore gave the cattle alarm, in addi-

tion to ringing the bell. The engineer said that Jefcoats was on the outside of the rail, on the cross-ties north of the train; that the cross-ties were filled in with slag; that the deceased was kneeling or crouching back on his heels facing the train, and on the outside of the rails; that the deceased's head was lowered as though he was looking at the ground in front of him, and that he was struck by the pilot step on the east side of said engine, no other part of the engine striking the deceased. When the engineer saw the man was ignoring his signals, he put on his emergency brake and stopped the train, the sixth car being opposite the deceased. The engineer says he went out and saw the deceased lying on the ground where he had been thrown, but that he did not examine the body. From the time the engineer saw Jefcoats there was no movement of his body until he was struck by the engine.

Other witnesses testified that Jefcoats' body was still warm and that it was "limber;" that there were no props of any kind around the deceased, and that the blood from the deceased's body was fresh and not coagulated. One witness testified that the deceased's body was on the east side, and his cap was found forty or fifty feet from his body.

Jefcoats lived in Laurel, Mississippi; his residence being about a mile from where he was killed.

Another witness testified that the body of the deceased was found six or eight feet below the track in a crumpled position with his face and head badly crushed, and that he had been struck from the front; and the undertaker said, from his experience, the deceased had been dead only a few minutes. His testimony was to the effect that the deceased must have been alive at the time he was struck by the engine.

There were no controverted facts in the record. There was no effort to show any motive on the part of the deceased for the taking of his life. The record is barren

of any statement as to his outlook on life; there is nothing to show that he was melancholy or financially depressed, and we glean from the record no effort to trace the movements of the deceased, or his condition, mentally or financially, prior to the time he was struck by this engine.

The life insurance policy is in the usual form, but in the contract there was this provision: "In case of self destruction committed, whether sane or insane, within two years from the date hereof, the extent of recovery hereunder shall be the premiums paid." The double indemnity clause in the policy reads as follows: "The Company will pay the beneficiary in full settlement of all claims hereunder double the face amount of this policy, if, during the premium paying period, and before waiver of any on account of disability, and before default in the payment of any premium, and before any non-forfeiture provision other than automatic premium loan is in effect, the death of the Insured results from bodily injury within ninety days after the occurrence of such injury provided death results directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means. Except, these provisions do not apply if the Insured shall engage in military or naval service, or any allied branch thereof, in time of war, or in case death results from bodily injury inflicted by the Insured himself, or intentionally by another person; or from engaging in aeronautics or submarine operations, either as a passenger or otherwise, or from a state of war or insurrection or self destruction, or directly or indirectly from bodily or mental infirmity, poisoning or infection other than that occurring simultaneously with and in consequence of bodily injury."

Among other instructions unnecessary to set forth, the court gave for the appellee the following instruction: "The court instructs the jury for the plaintiff that the

burden of proof to prove suicide is upon the defendant and when circumstantial evidence is relied upon to prove suicide, then such circumstances must exclude with reasonable certainty any hypothesis of death by accident, natural causes or by intentional acts of another;'' and also the following instruction was given for the plaintiff: ''The court further instructs the jury for the plaintiff that it is the law that the burden of proof is upon the plaintiff to prove his case by a preponderance of the evidence, but that the burden of proof is upon the defendant to prove by a preponderance of the evidence an exception in the policy, and hence the burden of proof is upon the defendant, Insurance Company, to prove by a clear preponderance of the evidence that the deceased committed suicide.''

The court gave for the defendant, the insurance company, the following instruction: ''The court tells you for the defendant that the burden is upon the plaintiff to prove by a preponderance of the evidence that the death of the insured was accidental.''

The appellant and the appellee both insist that each was entitled to a peremptory instruction.

There is no question but that the insurance policy was in full force and effect, and that the deceased met his death by being struck by the step of the pilot of the engine. It is equally clear that the testimony of the engineer as to what he saw was within a period of eight or ten seconds, considering the rate of speed of this train.

It is insisted by the appellee that no error can be predicated on the instructions, for the reason that she was entitled to a peremptory instruction on all the facts.

In this action for one thousand dollars on the ordinary life insurance policy, the burden of proof was upon the appellant to establish, by a preponderance of the evidence, that the deceased came to his death by his own volition, or, in other words, that he was a suicide; that he could not have placed himself in the position de-

scribed, with his face toward the on-coming train, on the cross-ties, so near to the rails on which the train was moving, ignored the train signals, etc., with any other intention than that of destroying himself by allowing the rapidly moving train to strike him; that there was no other reasonable hypothesis than that of intentional self-destruction, conceding that the presumption is that no man intentionally destroys himself, and that the appellee had the benefit of this presumption throughout the entire case.

On the other hand, the appellee contends that the facts detailed disclose that Jefcoats would have placed himself between the rails if he had intended self-destruction, thus making certain of the object which he desired to accomplish; but that, through inadvertence or miscalculation as to his distance from the rails, he was struck by the train, or because something had evidently happened to him out of the ordinary, because of the fact that his cap was found some distance from his body, on the opposite side of the track; and it is just as reasonable to believe that he fell asleep, or was suddenly ill.

We are of opinion that the circuit judge should have submitted these facts to a jury for their determination, for, while the facts are not controverted, still reasonable men might draw different inferences from the state of facts here detailed. These circumstances do not point unerringly to either of the theories so that it could be said as a matter of law, by the court, that the facts did or did not establish a case of suicide. Many authorities are cited wherein courts have held that the facts in the particular case establish suicide in a case similar to the one at bar; but we must observe that in all these cases, in addition to the circumstances immediately surrounding the death of the insured, there appear motives for the suicide. In the case at bar, we have no glimpse of the past history of the deceased. We must assume he was happy, possessed of no melancholia, in no kind of

trouble, either fancied or real, and that he was happily situated in his domestic relations. His presence a mile from home is unaccounted for; his crouching position might be thought by some to have been of intention and plan, and, on the other hand, he may have suffered for the moment a slight vertigo, or even stopped to rest for a moment because of some physical reaction, and may have dozed, or he may have been closer to the rails than he calculated, or he may have been careless for a few moments.

We must indulge the presumption that he did not intend, voluntarily, to commit suicide, for, at common law, suicide was a crime, and to aid and abet one in his willful self-destruction is a violation of a statute of this state (Code 1930, section 1138). If either of these hypotheses had been adopted by the jury, its verdict would not be disturbed by this court.

We are of opinion that no peremptory instruction should have been given for either side in this case under the rule announced in the case of Life & Casualty Ins. Co. of Tennessee v. Andrews, 149 Miss. 306, 115 So. 548, 551, as follows: "The presumption of law is against suicide, but such presumption is not conclusive; it is only prima facie; it may be overcome by the evidence. In order, however, to justify the court in taking the issue of suicide, or not, from the jury, and directing a verdict in favor of the suicide, the evidence going to establish suicide must be so strong as that no other reasonable inference can be drawn therefrom than that of suicide. If the evidence is such, although it is without conflict, that two reasonable inferences can be drawn therefrom, one in favor of suicide and the other against, then, plainly, it is a question for the jury. On the other hand, if only one reasonable inference can be drawn from the evidence and that is suicide, then there is no question for the jury; there is only a question of law for the court."

The appellant, the insurance company, points out that in the action for one thousand dollars of ordinary life insurance, the burden of proof was upon it to establish, by a preponderance of the evidence, that the death of the insured, Jefcoats, was caused by his suicide; but it further maintains that, as applied to the action for the double indemnity, the burden of proof was upon the appellee to establish that the death was accidental, and, if suicide, it could not have been accidental.

Everything must be considered as proved which the evidence established, either directly or by reasonable inference, against the party who requests a peremptory instruction. Dean v. Brannon, 139 Miss. 312, 104 So. 173, 175.

It cannot be controverted that, in the action on the ordinary life insurance policy, the defendant having filed an affirmative plea, it had the burden of maintaining this affirmative plea. This rule of law was applied and applicable by the appellee's instruction quoted above, but the instruction went further and placed the burden of proof as to the double indemnity clause of the policy upon the appellant. As to the one thousand dollars sued for in the declaration on the double indemnity clause, the burden of proof was upon the appellee to show that not only the death of the insured was brought about by external and violent means, but by accidental means, and an injury inflicted by the insured, himself, or suicide, is not embraced within the terms ''accidental means;'' so that in this case, as to the double indemnity clause, the burden of proof was upon the plaintiff throughout the case. Of course, she was aided in establishing this proof by the presumption that the deceased did not inflict the injury upon himself which resulted in his death, or, putting it plainer, commit suicide. See 5 Wigmore on Evidence (2 Ed.), section 2150c. The rule is accurately stated in Cornelius on Accidental Means, page 93, as follows: ''In a suit on a policy of accident insurance,

where the issue to be determined is whether the injuries causing death were effected through accidental means, or by the suicidal act of the insured, the law indulges in a presumption against suicide, and by the aid of this presumption, the plaintiff makes a prima facie case, sufficient to go to the jury, by showing that the death was occasioned by a bodily injury effected through external and violent means, without showing by direct evidence that the same was effected through accidental means. Where, however, the evidence is conflicting, the presumption against suicide is not sufficient to place upon the defendant the burden of showing that the injuries were inflicted with suicidal intent. On the contrary, the burden is upon the plaintiff throughout, assisted by the presumption just referred to, to establish by a preponderance of all the evidence that the injuries were effected through accidental means, and were not self-inflicted."

In a similar case to the one at bar, Taylor v. Pac. Mut. Life Ins. Co., 110 Iowa, page 621, 82 N. W. 326, that court said: ''That to entitle the plaintiff to recover at all, he must prove by a preponderance of the evidence that his was an accidental injury, because the policy only insured him against such injuries. It is true that when an injury is shown the presumption arises that it was not self-inflicted, and to defeat a recovery the defendant must negative this presumption; but, in cases where the very foundation of the action is accidental injury, the presumption which the law raises is only an aid to the other evidence on the subject, and does not operate to shift the burden of proof on the entire issue to the defendant." See Whitlatch v. Casualty Co., 149 N. Y. 45, 43 N. E. 405; Fidelity & Casualty Co. of New York v. Weise, 182 Ill. 496, 55 N. E. 540; Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308.

While the evidence in the case at bar was not conflicting, yet a reasonable hypothesis was fairly deducible by reasonable men, either in favor of, or against, suicide.

A person who intentionally inflicts injury upon himself resulting in death cannot be said to have died of accidental means. The instruction given for the appellee imposes upon the appellant the burden of proving, in the suit for the double indemnity, that the deceased died of injuries self-inflicted.

We have examined all the other instructions in the case, and they do not aid us in the slightest degree in relieving the case of the irreconcilable conflict thus presented by the two instructions, and the jury were left without any guide as to where the burden of proof was with reference to the accident clause of the policy.

For this error, the case must be reversed, and will be remanded, unless the appellee shall see fit to enter a remittitur in the sum of one thousand dollars, the amount recovered on the double indemnity clause of the policy, in which event the case will be affirmed. If the remittitur is not promptly entered, the case will be remanded for another trial.

Affirmed with remittitur.