DAVIS *v*. GULF STATES INS. CO.

(Division A. Nov. 20, 1933.)

[151 So. 167. No. 30851.]

Vollor & Teller, of Vicksburg, for appellant.

Brunini & Hirsch, of Vicksburg, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Davis, the appellant, brought suit against the Gulf States Insurance Company, appellee and cross-appellant, on a policy of insurance on the life of Barnes, seeking to recover three hundred eighty dollars, the full face value of the policy. The insurance company denied liability, and, issue having been made up, there was a verdict for the plaintiff, the appellant, for one hundred ninety dollars, and judgment accordingly. Appeal upon the record was prosecuted to the circuit court, and, upon its consideration there, the court affirmed the verdict and judgment of the county court as to liability, reversed it as to the amount of recovery judgment, and entered a judgment for forty-seven dollars and fifty cents and costs in favor of the appellee.

The appellant, Tom Davis, prosecuted a direct appeal to this court, and the insurance company prosecuted a cross-appeal.

The facts essential to a decision of the case on both appeals are: Davis was a negro operating an elevator in a building in which the appellee insurance company had an office. Erwin, an agent of the insurance company, approached Davis for names of possible insurance applicants. Davis suggested that Barnes, the insured herein, would perhaps take out insurance. Thereupon Erwin, the agent, called upon Barnes and secured his application, and, according to the appellant's evidence, carried the policy to Barnes, who instructed him to deliver the policy to the appellant, Davis, who was named as beneficiary in the policy of insurance. Davis was not related to, nor a creditor of, Barnes, the insured. His statement is that the policy was delivered to him by the agent of the insurance company at the request of the insured, and that

the insured gave him the money with which to pay the policy premiums weekly, that is, twenty-five cents a week, and that the premiums were all paid by him with money given to him by Barnes.

The agent of the insurance company, Erwin, testified that the policy was taken out by the beneficiary, Davis, and delivered to him, and never presented to Barnes, the insured, and that the premiums were paid by the beneficiary, the appellant herein, and not by Barnes, the insured.

The policy on its face, in full type, fixes the amount payable at the death of the insured, three hundred eighty dollars, but there was a provision in the face of the policy to this effect: "It is understood and agreed that if the Insured is ten years of age or older, when this policy is issued, the liability of the Company shall be limited during the first six calendar months this policy is in force to one-half of the sum named in the schedule above."

The policy stipulated that it was subject to the conditions named therein and on the reverse side thereof. On the reverse side of the policy under the heading "Conditions," in fine print, there are fourteen paragraphs, No. 8 of which reads: "Limitation. Unless otherwise stated in a waiver signed by the President or Secretary, this policy shall be void if the Insured, before its date, has been rejected for insurance by this or any other company, order or association, or has been attended by a physician for any serious disease or complaint, or has ever had before said date paralysis, cerebral hemorrhage, tuberculosis, or other pulmonary disease or chronic bronchitis, asthma, cancer or any disease of the heart, liver, or kidneys and in the event of the death of the Insured within the first twelve (12) months from the date of the policy, due directly or indirectly to any of the above named causes or diseases, or from homicide, the liability of the Company will be limited to one-fourth (¼) of the sum otherwise payable."

The cause of death of the insured as shown by the evidence—only by the proof of death filed with the insurance company—was myocarditis, the proof of death filed containing this question and answer: "Q. What was the cause of death? A. Myocarditis," which unsworn proof was signed by Davis, the beneficiary. Davis, as a witness in his own behalf, testified that he did not fill out the policy, that it was done by a physician and the agent of the insurance company. He testified that he did not know the cause of the insured's death, nor did he know what "myocarditis" was; his testimony to that effect being: "Q. State if you know what myocarditis is? A. It might be something you find in the woods for all I know."

There was evidence as to the release of the policy by the insured, secured by the agent of the insurance company a few days before Barnes, the insured, died, and at a time when Barnes was speechless, but no point is made here of the release, as the jury found by its verdict that the policy was in force at the time Barnes died.

On the cross-appeal, it is urged by the insurance company that there should have been no recovery, for the reason that Davis, a friend only of the insured, Barnes, had no insurable interest in the life of Barnes, because he, the appellant, took out the insurance in fact and paid the premiums thereon, and at the instance of the appellant the court instructed the jury that they must find that the deceased, the insured, took out the policy and paid the premiums thereon before the jury would be warranted in finding a verdict for the beneficiary.

The evidence of the beneficiary, Davis, the agent, Erwin, and the insurance company is in direct conflict. The jury settled the issue in favor of the defendant. We think the court properly submitted that issue to the jury.

Recently this court in the case of National Life & Accident Insurance Co. v. Ball, 157 Miss. 163, 127 So. 268, held that, in a case where the insured was mother-in-law of the beneficiary, and the beneficiary took out the insurance and paid the premiums thereon, with the consent of

the insured and with the knowledge of the insurance company, the son-in-law had no insurable interest in the life of the mother-in-law, and that there was no reasonable ground founded upon the relation the parties to expect some advantage to the son-in-law from the continuance of the assured's life, and that the policy was in contravention of public policy and void. To the same effect is Murphy v. Red, 64 Miss. 614, 1 So. 761, 60 Am. Rep. 68; 37 C. J. p. 385, section 51; Warnock v. Davis, 104 U. S. 775, 779, 26 L. Ed. 924; and that principle is well established as to most states where there are controlling statutes.

But it is the contention of the appellant, Davis, that the jury have found that the insured took out a policy of insurance on his own life and paid all premiums thereon; in other words, that the beneficiary had not procured the insurance. Such was the verdict of the jury, and which, in our opinion, was warranted. It is well settled that every person has an insurable interest in his own life, and that he may procure insurance and name as beneficiary in the policy any person whom he desires to be the beneficiary. This rule is as firmly fixed in the jurisprudence of this country as the other. It is not a gambling contract if the insured, in good faith, procures and pays for the insurance. Much emphasis is placed by the courts upon the payment of the premiums on the policy, and in some cases it seems to have been the determining factor. See 14 R. C. L. p. 920, p. 1384, and we quote the following from 37 C. J. 389:

"What Constitutes—(1) Interest of Insured. A person may in good faith and without fraud, collusion, or an intent to enter into a wagering contract, lawfully take out a policy of insurance on his own life and make the benefit payable to whomsoever he pleases, either himself or his estate or a third person regardless of whether or not the latter has an insurable interest; insured has an unlimited insurable interest in his own life which is sufficient to support the policy; and, except in some juris-

dictions, the transaction is not contrary to statute or public policy. On the other hand the policy is invalid where it was procured by insured, on the inducement of the beneficiary, for the purpose of enabling the latter to effect insurance on the life of a person in which he had no insurable interest and thereby to evade the law against speculative or wagering insurance; but in such case it is not so much a question whether the beneficiary had an insurable interest in the life of the person who procured the policy as it is a question of the good faith and motives behind the procurement. . . ." See, also, National Life & Accident Insurance Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886; 2 Cooley, Briefs on Ins. (2 Ed.), 1298; Dolan v. Supreme Counsel, 152 Mich. 266, 116 N. W. 383, 5 Ann. Cas. 232, 16 L. R. A. (N. S.) 555, and annotations thereto.

The good faith of the issuance of this policy was settled by the jury adverse to the contention of the cross-appellant, the insurance company.

The only further question presented in the cross-appeal is as to the amount of recovery under the terms of the policy. The cross-appellant, the insurance company, seems to contend that the answer as to the cause of the death of the insured, myocarditis, a disease of the muscles of the heart, which may be either chronic or acute, limited the recovery in this case at all events to one-fourth of the amount payable under the policy, but for the limitation the amount due under the conditions existing here would be one hundred ninety dollars. But, under the exception which is set forth at length, it is our opinion that, if the insured had any of the diseases, including one of the heart named in section 8 of the policy's provisions, at the time the policy was taken out, or if he died of any of the diseases mentioned therein, that the limitation, if proved, was a matter defensive to the insurance company; and, if it had been shown without question that the insured died of myocarditis, the recovery would be limited to forty-seven dollars and fifty cents. But we think, under all the

circumstances of the case here, the county court properly submitted the question to the jury as to whether or not the insured died of myocarditis, and the jury have decided on the evidence which we have set forth—that it was not proved that he died of the said disease.

The burden of proof was on the insurance company to show that the insured died of one of the diseases named in the exceptions in the policy, and in the unsworn proof of death the beneficiary stated the cause as myocarditis. That was an unsworn statement, an admission against interest, which the appellant said others had inserted in the proof of death; and his testimony in explanation thereof is that he did not know the cause of the insured's death, and he did not know of such a disease as myocarditis; so that his sworn statement is that he did not know the cause of the insured's death. The burden of proof was upon the insurance company to show that the insured died of one of the diseases named in section 8 of the conditions named in the policy. See Jefferson Standard Life Ins. Co. v. Jefcoats, 164 Miss. 659, 143 So. 842.

The appellant urges that the exceptions enumerated covered directly or indirectly all the diseases to which the cause of death of a human being might be attributed, and urges on this court, as a matter of public policy, the decisions of courts which declined to enforce such an exception. However, we can imagine that there might be other causes of death not within the exceptions named. But we will say that the agent, the representative of the insurance company, rushed to the bedside of a speechless man to secure a release from liability by the company. But there is no showing that Barnes, the insured, was not of lawful age and fully qualified to make a contract; and, if he made a contract of so little benefit to him, it is not for us as a court to so construe it as to relieve him of his folly. One answer might be that he paid but a small sum for the amount of insurance, and the answer to that might be that there was to be paid but a small sum if the insurance company became liable on the policy.

We are of the opinion that all the other questions argued are disposed of by what we have heretofore said; that the verdict of the jury in the county court should have been upheld by the circuit judge on appeal; that the beneficiary, Davis, was entitled to recover the full amount due on the policy, which was one hundred ninety dollars, the jury having found the issues of fact against the insurance company.

A judgment will be rendered here in accordance with the verdict of the jury in the county court for the appellant, Davis, for one hundred ninety dollars and interest, against the insurance company.

Reversed, and judgment here for appellant.