COLUMBUS & G. RY. CO. *v.* COBBS.

(Division A. Feb. 24, 1930. Suggestion of Error Overruled, Mar. 24, 1930.)

[126 So. 402. No. 28160.]

Gardner, **Odom** & **Gardner**, of Greenwood, for appellant.

**Osborn** & **Witty**, of Greenwood (**Frank Everett**, of Indianola, of counsel), for appellee.

Argued orally by **A. F. Gardner**, for appellant, and by **F. M. Witty**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

This is a suit by the widow of Sam P. Cobbs to recover damages from the appellant for Cobbs' death. It is alleged that he was negligently and wantonly killed, in the town of Moorhead, by the operation of one of appellant's trains, being negligently run and operated on the railroad tracks of the appellant, and being propelled by steam, under circumstances unknown to the appellee.

Upon the close of the evidence the appellant asked for a peremptory instruction which was refused, and the case was submitted to the jury. The appellee rested her case upon the prima-facie negligence statute as shown by the instructions. There was a substantial verdict for the appellee, judgment rendered thereon, and the Columbus & Greenville Railway Company, the appellant, prosecutes this appeal therefrom.

The appellee offered evidence to the effect that two men found the body of the appellee's intestate. He was lying with his head toward the main line of the railroad and his hands toward the switch track; his head was on the cross-ties upon which the rails were laid; his feet were between the rails a short distance from the body; he was a few feet from the tool house, which the record shows was about three hundred or four hundred

yards from the depot. The railroad runs east and west through Moorhead. Cobbs' legs were severed from his body. One witness testified that his legs were west of the body and there was blood along the track and a pool of blood where his body was lying. Another witness testified that his legs were east of his body a few feet, and that there was blood along the track. Cobb was suffering intensely, and those who approached him could not get much information from him. A doctor was called and stated that the accident had happened, in his judgment, about an hour before, or possibly longer. Those who gathered around the body could not find out the name, but his name was discovered by some papers. He then wanted to be carried to his home in Greenwood.

Upon the testimony of the man who discovered his body and the doctor who attended him at the place where the injury was thought to have occurred, the appellee rested her case.

The railroad showed that on this night the railroad company ran a train from Greenwood west to Indianola; it was a relief train drawn by two engines, or a "double-header" carrying four freight cars loaded with boats and lumber and provisions for the Red Cross; that on account of the overflow of the Mississippi river the train could go no further west than Indianola. The train reached Indianola about ten o'clock, stayed there about an hour and a half, left Indianola about eleven o'clock at night, and reached Moorhead about twelve o'clock. It was shown that on the trip from Greenwood to Indianola Cobbs was sitting alone in a Red Cross car; others joined him, and, on account of his talk, concluded that he was drinking, but no witness testified to the smell of any whisky. He was seen at Indianola, just before the train left there for its return trip, standing on the footboard of one of the engines. No fares had been charged the people who went over to Indianola on the train. It appears that the railroad permitted anyone to go who desired to do so, and some returned without paying fares.

On the return trip from Indianola the engines which pulled the train did so backing, there being no turntable at Indianola, and according to all the evidence the engines left Moorhead on the trip east to Greenwood backing. There was a small light on the tender of each engine, and the headlights, of course, were turned westward as the train proceeded eastward.

All of the crew were introduced and all of them say that they did not see the deceased, nor was there anything unusual to attract their attention. Both engineers testified that they did not see him. It was shown that the train reached Moorhead about twelve o'clock and remained there about forty-five minutes; that there was some switching done by the train; and that the engineers and the firemen were on the lookout. It was also shown that, because of the want of a headlight and the cars attached to the engine in switching, they could not see very far, about forty or fifty feet one witness said. The train is shown to have left Moorhead, going east, about twelve forty-five o'clock a. m. or one o'clock. All of the employees on the train testified that they did not see the deceased on the return trip nor at Moorhead.

Davis, a nightwatchman in the town of Moorhead, testified that, on the night Cobbs was injured, he was standing at the depot when this relief train, on its return trip, came in from Indianola "something after twelve o'clock;" that it was a mixed train; that he saw the deceased get off between the engine and the car; and that he told Cobbs to get back on the train, "you haven't got any business off here this time of night." The deceased answered that he wanted to take a little recreation, and walked off down the railroad track. The witness said this was about thirty minutes before the train left Moorhead on its trip east. When the train left, the witness was on the north side of the road crossing within four or five feet of the deceased, and he saw the deceased, Cobbs, "grab the train, step up to the track and make a snatch this way (indicating)." Davis did not know

whether deceased caught the train at the time he saw him "grab at it" or not. He testified that some forty or fifty minutes later he was informed of his injury; that he went to the scene where the body of Cobbs lay; and that, although there was some inquiry, he made no statement to any one as to who the man was, or as to what he had previously seen. The next morning he told the railroad company's physician of the circumstances. He said that at the time he saw the deceased "catch at the train" near the road crossing, the train was running about twelve or fifteen miles an hour within the corporate limits of the town of Moorhead.

This witness was subjected to a rigid cross-examination as to his past life, which disclosed that for many years he worked at different employments, for two years at a time, and had lived in many places, and that at the time of the trial he had no employment but had no interest in the case. The record does not disclose the distance from the road crossing where Davis saw Cobbs attempt to board the train, and the spot where his body was later found. Davis further said, on cross-examination, in answer to the question: "What did he grab after? [Referring to Cobbs.] A. Looked like he grabbed after the side of the car, I couldn't tell.

"Q. You could see him plainly when he did that? A. Yes, sir.

"Q. You could see his whole body? A. Yes, sir.

"Q. Yet you didn't see him fall under the train? A. No, sir, I didn't."

After suffering great pain, Cobbs died the day after the accident at ten o'clock in the morning. He was a man who weighed about one hundred and forty pounds and was about forty-five years of age.

On the appeal here the railroad contends that it was entitled to the peremptory instruction, which was refused in this case, because it is shown by all the circumstances and by the negative testimony that the railroad could not have been guilty of any negligence which

proximately caused the death of Cobbs; that in undertaking to board its moving train Cobbs was a trespasser; and that the railroad is shown to have owed him no duty save not to willfully or wantonly injure him.

The appellee, realizing the gravity of Davis' evidence, urged that the jury rejected his evidence and disbelieved it, and was fully warranted in so doing. The ground of her contention was Davis' failure to reveal what he knew to the bystanders assembled at the scene of the accident; that he denominated the train a mixed train instead of a freight train; and that by his own evidence he was a wanderer who did not long remain in one place or hold the same position for a great length of time. There was no effort to impeach Davis, and it has not yet been held that because a man is a wanderer and nomadic in habit he is unworthy of belief.

We have carefully read and reread this record and this evidence and we can find no substantial contradiction and no reason why the jury would be warranted in rejecting this testimony, and, on this question of peremptory instruction, it must be taken here to be true.

Appellee also calls attention to the statement of some witnesses that there was considerable switching, and that the deceased might have been injured by this double-header train while engaged in switching, or that he might have been injured by some other train. These theories and conjectures are eliminated from the case by the evidence of Davis. He said this train was leaving Moorhead when he suddenly arose, and in his confused mental condition came in contact with the moving cars and was killed. But it may be said this is merely a conjecture or theory. We do not think that the evidence in the case and the physical facts here shown stop at mere conjecture as to how the deceased was injured. They go far beyond that. In our judgment, they clearly show that the injury was not inflicted by any want of ordinary

care upon the part of the defendant, but was due solely to the negligence of deceased.

"Indeed, the physical facts corroborate the testimony of the engineer and other witnesses so strongly, and we are driven to the conclusion that this deplorable accident was attributable to the want of due care on the part of deceased, and not from negligence on the part of defendant railroad company."

How much stronger is the case at bar, when we consider that Cobbs was seen, apparently sober, undertaking to board a car of this rapidly moving train, with its engine ahead in motion, which shows a desire on his part to board this train, in conjunction with the testimony of the engineers, firemen, and all the train crew, that they had not seen the man, and that each member of the crew had been in the performance of his duties, and together with the fact that he was found with no injuries save that of having his legs severed from his body, his legs lying between the rails and the rest of his body lying just outside the rails on the cross-ties of the track? Every other theory is fairly and reasonably excluded by this evidence. This application of the rule, we think, is sustained in the case of M. & O. R. R. Co. v. Robison, 132 Miss. 841, 96 So. 749. And this rule which we have here applied, as announced in the Hunnicutt, case, was applied to the facts in the case of G. M. & N. R. R. Co. v. Jones, 137 Miss. 631, 102 So. 385.

In undertaking to board the rapidly moving train this unfortunate man sought and accomplished his own death, and the railroad company has circumstantially, and by negative testimony, shown this to be the case.

Reversed and judgment here for appellant.