Goodwin *v.* Misticos et al.

In Banc. Oct. 24, 1949.

No. 37192 (42 So. (2d) 397)

Hall and Roberds, **JJ.**, and McGehee, **C. J.** dissent.

**E. B. Todd, Lester Franklin,** and **L. C. Franklin, Jr.,** for appellant.

**Butler & Snow,** for appellees.

Montgomery, J.

This is an appeal from the Circuit Court of the First Judicial District of Hinds County. Mrs. Goodwin filed suit there against Alex Misticos and Armand Coullet, alleging in her declaration that they operated a restaurant in the City of Jackson, and that at about 7 P.M. on April 1, 1948, she and her husband, T. P. Goodwin, entered said restaurant for the purpose of ordering a meal, and stated to the waitress that they wanted corned beef if it was not canned, and they both ordered corned beef, which was served them and eaten by them; that within a few hours, T. P. Goodwin became violently ill as a result of eating said corned beef, and his condition was diagnosed as ptomaine poisoning, and that he died as a result of eating said corned beef; that the restaurant was under a duty to see that the food they offered for consumption by their patrons was free from infection, was wholesome and suitable for human consumption, but defendants violated this duty and ''did negligently and with gross, wilful and wanton negligence offer to the said T. P. Goodwin said corned beef which was not wholesome, nor free from infection, nor suitable for human consumption, which he ate, and as a direct and proximate result of defendant's negligence, and gross, wilful and wanton negligence, died therefrom.'' It will not be necessary to set out the remainder of the declaration, as the foregoing will be sufficient for a determination of this controversy.

The defendant answered, admitting the operation of the restaurant, but denying the duty charged in the declaration, denying the negligence, and denying that the death was proximately caused thereby.

It will be observed that this suit is not framed on any implied warranty that the food was wholesome and free from infection and fit for human consumption. Any right of action upon such implied warranty died with Mr. Goodwin. Hasson Grocery Company v. Cook,

196 Miss. 452, 17 So. (2d) 791. But this suit is based on Section 1453, Code of 1942, which gives a right of action for any injury producing death caused by a real, wrongful or negligent act. Hence, we cannot look to the cases involving implied warranty. They have no application here. This suit being based on Section 1453 of the Code of 1942, negligence on the part of the appellees must be alleged in the declaration, proven on the trial, and the death must be shown to have occurred as a proximate result of such negligence.

Faced with this burden of proof, Mrs. Goodwin placed Dr. E. A. Copeland on the stand as her witness. He testified that he had known Mr. Goodwin for fifteen years and that he was in good health; that he received a call from Mrs. Goodwin for Mr. Goodwin on the night of April 1, 1948, but was unable to visit him because of a sprained ankle that prevented his getting about, but that he visited him on April 3d (two days after he had eaten the corned beef), and he was lying across the bed in a cold state of perspiration and vomiting, that his bowels were loose; that he sent him to his clinic where he arrived at about 5:30 P.M. on April 3d; that he was very sick, continued to vomit the full time of his life; that his diagnosis, with the history of his symptoms, was ptomaine poisoning; that he lived six days thereafter and died on April 9, 1948: that he didn't make any test to determine whether corned beef was involved; that "ptomaine poisoning in a true sense is a bacterial infection of the alimentary canal, something carried there generally by eating food, drinking water, or something"; that this bacteria multiplies and sets up systematic symptoms like vomiting and diarrhea.

Mrs. Goodwin testified that she and her husband ate breakfast at home on the morning of April 1, 1948, and for breakfast he ate a piece of toast and drank a cup of coffee. She went to his office and was with him all day. He ate nothing during the day, ate no noon lunch as he was very busy, but off and on drank water in a paper cup

from water cooler in the hall, which water cooler was also used by the other tenants in the building. At about 7 ·P. M., witness and her husband went to the Belmont Cafe, and that witness asked the waitress "What have you to eat this evening?" and she replied "Have some corned beef." Witness then said "If it is canned corn beef, I don't want it, but if it isn't canned you bring me some." Mr. Goodwin said "You bring me the same." There were some french fried potatoes on the plates also, and they had coffee to drink. Mrs. Goodwin continuing as a witness testified "I ate several mouthfuls·and I thought well, I won't eat any more of this, it doesn't taste right to me." She says she didn't eat as much as Mr. Goodwin and said: "I don't believe I care for any more of this corned beef." "I have never tasted anything quite like this." Mr. Goodwin ate practically all of his. They paid their bill and went straight home. Mr. Goodwin never drank any water or ate anything else after they left the cafe before, about two hours later, when he became violently ill. Mrs. Goodwin called Dr. Copeland but he could not come so she got Dr. Sheffield. Mrs. Goodwin also began to vomit and was ill, she says, and Dr. Copeland testified he also treated her for food poisoning. Plaintiff rested after calling these two witnesses. The record is silent on what Mr. Goodwin ate and drank, if anything, between the time he left the Belmont Cafe on April 1st and the time when Dr. Copeland saw him on the afternoon of April 3d and diagnosed his symptoms as ptomaine poisoning. Dr. Sheffield did not testify.

We have set out the testimony rather fully because at its conclusion, a motion was made by defendants to exclude the evidence and direct a verdict for the defendant. This motion was sustained and a directed verdict was entered for defendant.

Appellant assigns four grounds of error in the judgment of the trial court, which are as follows:

"1. It was reversible error for the Trial Court to fail to apply to the evidence introduced by appellant

the universal rule that on a motion for a peremptory instruction, the facts which the testimony reasonably tends to establish and every reasonable inference to be deducted therefrom are to be considered as established. So viewing the evidence offered by appellant, she was entitled to a jury trial on the question of negligence.

"2. It was reversible error for the Trial Court to fail to apply the rule that an action sounding in tort may arise out of a breach of contract, under which rule this suit was properly brought on the theory that the negligence of defendants produced the death of the decedent, being a question for the jury.

"3. It was reversible error for the Trial Court to take this case from the jury, in view of the fact that appellant has established a prima facie case of negligence against the defendants under the rule of 'res ipsa loquitur' or the requirements of making out a circumstantial case of negligence.

"4. It was reversible error for the Trial Court to fail to apply to this case the rule that where the facts establish a probability of negligence, the case should be submitted to the jury; and it was reversible error for the Trial Court to apply to the case, as made out by appellant's proof, the rule that negligence may not be established by mere conjecture, possibility and surmise, taking the case from the jury."

In order to afford a panoramic view of our conclusions regarding this case, we will not discuss it from the narrow view of any particular ground assigned as error, but we will discuss these grounds as they happen to fall into their proper places in the panoramic picture.

An engineer, in staking out a project, always starts from what he calls his "datum post", and all of the courses and distances of the survey are tied in according to their positions with reference to this datum post. Here, at the outset of this discussion, let us, too, set up a datum post, so that all we may say herein will be tied in to our datum post and be related back to it. That

datum post is "negligence." The picture drawn in this opinion is upon the law of negligence and its appropriate action sounding in tort. This will throw all of the law of suits upon implied warranties, and their appropriate action sounding in contract, beyond the borders of our discussion picture.

First, let us set out the duty imposed by law upon the operator of a restaurant in preparing and serving food to the public. 22 Am. Jur. 888, Section 102, in discussing actions based on negligence, says: ". . . He must, in the selection and cooking of food for his customers, exercise the degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table. His liability is, however, based on his failure to exercise reasonable or ordinary care. Some cases state that he is not an insurer or guarantor against injury to his customers. Hence, a plaintiff, in order to recover, must, assuming that the action is not one for breach of warranty, establish carelessness or negligence on the part of the restaurant keeper, for to shift the burden upon mere proof of the injury would in effect impose the liability of an insurer upon the defendant."

It is argued here, and it may well be, that in these days of higher prices, with economy tempting restaurateurs to throw away, as waste, no food that can be profitably disposed of to customers, a higher duty should be placed upon them than the rule of reasonable or ordinary care, and that they should be charged with the liability of insurers against injury to their customers. This argument is one that might be properly directed to the Legislature but not to this Court, which has no legislative powers.

The defendants, as operators of their restaurant, owed to T. P. Goodwin the duty to use in the selection, preparation, cooking and serving of the corned beef served him that degree of care which a reasonably prudent man,

skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table and ██ ██ he is not an insurer against injury to his customers. A violation of this duty by the restaurateur constitutes negligence.

In order to hold the operator of a restaurant liable for an injury to his customer, sustained by serving to him food not suitable for human consumption, it must be shown that the restaurateur in the selection, preparation, cooking or serving of the food so injuring the customer did not use that degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table.

██ ██ In determining the right of a defendant to a peremptory instruction, the Court must assume as true everything which the evidence establishes either directly or by reasonable inferences which the jury might reasonably draw from such evidence. Lowe v. Mobile & O. R. Co., 149 Miss. 889, 116 So. 601; Mobile & O. R. Co. v. Clay, 156 Miss. 463, 125 So. 819, certiorari denied, Clay v. Mobile & O. R. Co., 282 U. S. 844, 51 S. Ct. 24, 75 L. Ed. 749; Columbus & G. R. Co. v. Cobbs, 156 Miss. 604, 126 So. 402; Lee County Gin Company v. Middlebrooks, 161 Miss. 422, 137 So. 108; Jefferson Standard Life Insurance Company v. Jefcoats, 164 Miss. 659, 143 So. 842; Keith v. Yazoo & M. V. R. Co., 168 Miss. 519, 151 So. 916; Gravette v. Golden Saw Mill Trust, 170 Miss. 15, 154 So. 274; Columbian Mutual Life Insurance Company v. Gunn, 173 Miss. 897, 163 So. 454; Masonite Corporation v. Dennis, 175 Miss. 855, 168 So. 613; Pitts v. Mississippi Power and Light Company, 177 Miss. 288, 170 So. 817; Stricklin v. Harvey, 181 Miss. 606, 179 So. 345; Wheat v. Teche Lines, 181 Miss. 408, 179 So. 553; Montgomery Ward and Company v. Windham, 195 Miss. 848, 16 So. (2d) 622, suggestion of error overruled, 195 Miss.

848, 17 So. (2d) 208; Long v. Patterson, 198 Miss. 554, 22 So. (2d) 490; Montgomery Ward and Company v. Skinner, 200 Miss. 44, 25 So. (2d) 572; Davidson v. McIntyre, 202 Miss. 325, 32 So. (2d) 150.

However, in the application of this last above mentioned rule, while the jury may accept a fact as true from testimony tending to establish that fact, and while the law may also reasonably infer another fact from a fact accepted as true, yet the rule extends no further, and it is not permitted to presume another fact from a fact presumed. A presumption cannot arise from another presumption. Masonite Corporation v. Dennis, 175 Miss. 855, 168 So. 613; Hinman v. Sabin, 147 Miss. 509, 112 So. 871.

In Masonite Corporation v. Hill, 170 Miss. 158, 154 So. 295, 298, 95 A. L. R. 157, Hill had gone swimming in a creek into which the Masonite Corporation discharged waste from its plywood plant and Hill claimed he had been burned about the feet and legs by poisonous elements in the water and he sought to establish these poisonous elements in the water by inference. The court there, while recognizing that the great weight of authority does not permit an inference to be drawn from an inference, but relaxing the rigor of the rule in certain cases, in discussing the question said:

"But the great weight of opinion, from so many of the able courts of the country, to the effect that an inference essential to the establishment of the cause of action may not be based upon another inference, admonishes us, first, that, in declining to recognize that rule, so stated, in this jurisdiction, we must, in allowing inference upon inference, do so with the firm limitation that the probabilities thereby permitted to be entertained are safe and dependable probabilities, measured by legal standards, for they involve more than the simple and generally unimportant affairs of everyday life; they involve in court procedure the liberty and property of others. Obviously every inference drawn from another inference produces a result

wherein the quality of probability becomes weaker and soon or later a stage is reached when serious doubt arises whether, under legal standards, the ultimate inference in the chain of inferences is a legally safe and dependable probability or has become only a more or less strong possibility, and, when that stage is reached, the proof is insufficient, so far as concerns judgments at law.

"The second admonition is that, in allowing inference upon inference, we should do so no further than the reasonable necessities of the case, in the interest of justice, require. Fortunately, in nearly all cases, particularly in civil cases, the necessities of the case do not require that the chain of inferences shall be lengthened, one link to another, through such an extent as to present as a practical question the problem whether the chain of inferences has become too long and therefore too weak to hold; for in nearly every case it will be found that one or more of the essential facts sought to be established by inference is or are capable of proof by direct, positive, or by demonstrative evidence, and thereupon there comes into play the rule that, where a party, who has the burden of proof, has the power to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, he must introduce that more explicit, direct, and satisfactory proof, or else suffer the presumption that, if the more satisfactory evidence had been given, it would have been detrimental to him and would have laid open deficiencies in, and objections to, his case, which the more obscure and uncertain evidence did not disclose. 22 C. J. p. 115; 23 C. J. p. 40; 10 R. C. L. p. 885; 9 Ency. Ev. pp. 959, 960; 1 Jones, Com. Ev. (2 Ed.), pp. 185, 186; Wigmore Ev. (2 Ed.), p. 585; Clifton v. United States, 4 How. 242, 11 L. Ed. 957.''

The court, after the foregoing analysis of the rule then refused to permit the establishment of the poisonous elements in the water by inference, and in doing so said: ". . . One of the absolutely essential links in the chain in this case is that the water contained poisonous ele-

ments which caused the particular injury, and this is sought to be established by inference. But this was a fact capable of direct and demonstrative proof by a chemical analysis of a sufficient sample of the water taken from the place where the alleged injury occurred and within a reasonable time thereafter. The state has in its employ chemical experts of the highest repute who, on request, in a case such as this, would make such an analysis, either free of charge or for only a nominal cost, and would do so impartially and dependably. Such an analysis would demonstrably disclose whether or not the water at the place of injury contained the poisonous or injurious elements which appellee has charged against appellant, and, moreover, would disclose whether, and the manner by which, the nonpoisonous effluent of appellant's plant had by subsequent changes become poisonous. Appellee, having the burden of proof, did not take this essential step, essential to the safe and satisfactory administration of justice, and, with a chain of inferences elongated and weakened by so many links as is the chain here, the presumption raised by that failure must be adjudged to turn the scales of judicial decision in favor of appellant. In other words, and to sum up what we have said, we shall allow in this jurisdiction the establishment of a case by inference upon inference so long as the ultimate inference, measured by legal standards, is without too much doubt, a safe and dependable probability; but no such inference upon inference will be permitted to prevail when the fact sought to be established by such inference upon inference is capable of more satisfactory proof by direct, or positive or demonstrative, evidence, within the reasonable power of the party holding the burden to produce. In thus prescribing, we secure the administration of justice in a more dependable way, and at the same time reconcile our holding with the real weight of authority.''

In the case at bar, whether Mr. Goodwin ate or drank anything between the time he left the Belmont Cafe and

the time when he was visited by Dr. Copeland was a fact capable of direct and demonstrative proof. Also, the fact whether the matter vomited up by Mr. Goodwin contained corned beef that was infected by poisonous bacteria was also one capable of direct and demonstrative proof by a chemical analysis. Also, the fact as to whether the poisonous bacteria got into the corned beef through lack of the required care on the part of the restaurateur is also capable of direct and demonstrative proof and hence that language in Masonite Corporation v. Hill, supra, is controlling here, wherein the Court says: ". . . but no such inference upon inference will be permitted to prevail when the fact sought to be established by such inference upon inference is capable of more satisfactory proof by direct, or positive or demonstrative, evidence, within the reasonable power of the party holding the burden to produce. In thus prescribing, we secure the administration of justice in a more dependable way, and at the same time reconcile our holding with the real weight of authority."

Measured by this duty on the part of a restaurateur and this standard of proof required to establish a negligent violation of his duty by the restaurateur, and this rule controlling the court in consideration of a motion for a directed verdict, let us lay down the facts established by the testimony in this case. (1) Dr. Copeland testified that ptomaine poisoning in a true sense is a bacterial infection of the alimentary canal, carried there generally by eating food, drinking water, or something. (2) Mrs. Goodwin testified that Mr. Goodwin on April 1, 1948, ate a piece of toast and drank a cup of coffee at breakfast, ate no noon time lunch, off and on all day drank water from a paper cup that was drawn from a public water cooler in the hall of the building where his office was located, and at 7:00 P. M. went with her to the cafe and ate practically all of the corned beef served him. She says hers didn't taste right, but she established no complaint by Mr. Goodwin regarding his and he ate prac-

tically all of it, though she described him as a very light eater. An hour and a half or two hours later, Mr. Goodwin is taken ill and starts vomiting. Two days later, in the late afternoon of April 3, 1948, two days, lacking only some two or three hours, after eating the corned beef, Dr. Copeland sees him and diagnoses his ailment as ptomaine poisoning. There is no proof showing what Mr. Goodwin ate or drank between the time when he ate the corned beef and the time when Dr. Copeland saw him and diagnosed his trouble as ptomaine poisoning, and there is no showing that he did not eat or drink anything during that period. This is all we have in this record. Is this sufficient to take the case to the jury, and did the lower court commit any error in sustaining the motion to exclude and directing a verdict for the defendant? We think not.

Let us now analyze this proof and determine whether enough is established by plaintiff's evidence, and all reasonable inferences to be drawn therefrom, to establish the negligence of the restaurant operators and a violation of their duty. From the proof the jury could reasonably find: (1) That Mr. Goodwin ate the corned beef; (2) in one and one-half hours he became ill; and (3) from these two proven facts the jury could reasonably infer there was a germ in the corned beef that made him sick. Now, under the rule we may not proceed further, and, on the reasonable inference that there was a germ in the corned beef, base another inference that the germ got into the corned beef through a negligent violation of his duty by the restaurant keeper. Now, does Dr. Copeland's testimony add anything to prove the negligence of the restaurant keeper, or establish any fact from which such negligence can be reasonably inferred? We think not. His testimony merely identified the illness, at a period removed almost two days from the time of the eating of the corned beef, as ptomaine poisoning. He testified that ptomaine poisoning is a bacterial infection of the alimentary canal, something carried there by eating food,

drinking water or something. The only reasonable inference that can be drawn from this testimony is that Mr. Goodwin, at some time prior to a few hours before Dr. Copeland saw him on April 3, 1948, had either eaten something or drunk something containing the bacterial infection. Here, under the rule, we must again stop. We cannot from this inference draw another inference that the bacteria got into the food or drink as a result of the negligence of the restaurateur. So, when we take the proof in this case and apply the rule, as limited in Masonite Corporation v. Dennis, supra, and Hinman v. Sabin, supra, we fall short of any proof of negligence on the part of the restaurateur, and under the limitations of the rule on inferences, we fall short of any inference of negligence. This Court, in Georgia Casualty Company v. Cotton Mill Products Company, 159 Miss. 396, 132 So. 73, said that negligence can arise only from failure to perform a duty owing to the injured person, and before there can be a recovery here against the restaurateur by Mrs. Goodwin, it must appear from the testimony, or by a reasonable inference, that can be reasonably drawn from the evidence that the appellees failed to perform the duty they owed to their customer, Mr. Goodwin. To prove that they served him corned beef, that he ate it and died is not sufficient. They must also show that the appellees were negligent, and that his death proximately resulted from such negligence.

The rule announced in Sheffer v. Willoughby et al., 163 Ill. 518, 45 N. E. 253, 254, 34 L. R. A. 464, 54 Am. St. Rep. 483, cited with approval by this Court in Johnston v. Swift & Co., 186 Miss. 803, 191 So. 423, is as follows:

"Whether the plaintiff became sick from eating the oyster stew at the defendants' restaurant was a question for the jury, and while the evidence produced by plaintiff that eight or nine hundred persons were served with oyster stews at the same time and place, none of whom became sick, would seem to be a strong circumstance tending to establish that the plaintiff's sickness was at-

tributable to other causes, yet we are inclined to the opinion that, if plaintiff had made out her case in other respects, it would have been the duty of the court to submit this question to the jury. It will be observed that the plaintiff, in her declaration, averred that the defendants, as restaurant keepers served appellant with oysters, and 'carelessly, negligently, and unskillfully, and through carelessnesss,' did 'deliver to the plaintiff, to be by her eaten, an oyster stew that was not good or wholesome, but deleterious, dangerous, and poisonous,' etc., whereby appellant became sick. This was, no doubt, regarded by the plaintiff as a material averment; and it was a material averment, one upon which the right of recovery of appellant rested; and, unless the evidence fairly tended to establish negligence on the part of the defendants, plaintiff could not recover. But it is said in the argument that innkeepers are prima facie liable for losses which happen to the goods of their guests, and, on the same principle, restaurant keepers should be prima facie liable for injury resulting from unwholesome food furnished by them. The law is well settled that the keepers of public inns are required to safely keep the property of their guests, and in case such property is lost the innkeeper can only relieve himself from liability by proving that the loss occurred without any fault on his part, or that the loss occurred through the fault of his guest; and the burden of proof to exonerate the innkeeper is upon himself, for the reason that the law, in the first instance, will attribute the loss to his default. Johnson v. Richardson, 17 Ill. [302] 304, [63 Am. Dec. 369]. As respects the goods of a guest, which he takes with him when he stops at an inn, the innkeeper is practically an insurer; and, where an action is brought to recover for goods lost, the guest is only required to show the existence of the relation of innkeeper and guest, and the loss, to authorize a recovery. But as to food served at a restaurant, such as oysters, ice cream, and the like, we are not aware that a similar rule establishing

liability ever existed. There is no similarity between the two cases, and the principle that governs one does not apply to the other. If a person keeping a public restaurant fails to exercise ordinary care in furnishing food to his patrons, and damage results, he would be liable, if his business should be conducted in a careless or negligent manner, and through such negligence a patron is injured, the proprietor of the restaurant should be held liable. But, where an action is brought to recover damages, the burden is upon the person bringing the action to establish carelessness or negligence.

"Appellant claims that, having proven that she ate the oyster broth at the defendants' restaurant, and in consequence became sick, her case is made out, or at least the burden of proof is shifted on the defendants. If this rule was adopted, the plaintiff would be relieved from proving the most important element of her declaration, the negligence of defendants, which is really the foundation of the action. This would, in effect, make the restaurant keeper an insurer. Such a rule is not correct in principle, nor has it been sustained, so far as we are advised, by any respectable authority. In Wiedeman v. Keller, 58 Ill. App. 382,—a case cited by appellant,—where the plaintiff brought an action against a retail dealer in meats to recover damages resulting from eating pork containing trichinae, sold to him by the dealer. In deciding the case the court held that when a vendor of provisions has no notice of, and cannot, by the exercise of reasonable or ordinary care, ascertain, the unwholesomeness or unsound condition, there is no implied warranty of the soundness of provisions not prepared or manufactured by such vendor. Here there is no pretense that the defendant manufactured either the oysters or the milk, the two ingredients of the oyster stew, and, under the rule laid down in the case cited, there could be no liability. Appellant has cited Van Bracklin v. Fonda, 12 Johns., N. Y., [7 Am. Dec. 339] 468, as authority. But that was an action brought against a person for selling

a quarter of beef as good and sound, when it was bad and unwholesome; but it was proven that the vendor knew when he sold the beef that it was diseased, and, while the rule laid down in that case is proper, under the facts, it has no application to this case. Here the plaintiff called but one witness to prove negligence or carelessness on the part of the defendants, and upon an examination of the evidence of the witness, it will be found that the evidence, when fairly considered, does not tend to show that the defendants were guilty of any negligence or carelessness.

"As the plaintiff failed to introduce any evidence tending to prove the most material averment of her declaration, the instruction of the court to find for the defendants was correct. The judgment of the appellate court will be affirmed."

In Crocker v. Baltimore Dairy Lunch Company, 214 Mass. 177, 100 N. E. 1078, Ann. Cas. 1914B, 884, the Court said:

"This case was submitted to the jury on the question solely of the defendant's negligence, the plaintiff having declined to amend his declaration by adding a count in contract. The only question raised is whether the evidence warranted a finding for the plaintiff upon that issue. Whether the plaintiff might have relied upon an implied warranty by the defendant that its food was pure and wholesome (see Farrell v. Manhattan Market Co., 198 Mass. 271, 274, 84 N. E. 481, 5 L. R. A., N. S., 884, 126 Am. St. Rep. 436, 15 Ann. Cas. 1076, and Roberts v. Anheuser Busch Brewing Ass'n, 211 Mass. 449, 451, 98 N. E. 95), is not now to be considered.

"After a careful examination of the record, we find no affirmative evidence of such negligence. The testimony put in by the plaintiff went no further than to show that he bought and ate the defendant's food and became sick, from what the jury might find to have been ptomaine poisoning due to the food which he had eaten. The defendant's testimony indicated that all its food supplies

had been purchased from well known and reputable dealers; that its poultry was procured from a firm of wholesale dealers in poultry, under a contract which called for 'fresh killed poultry, large plump birds,' and that there could be no better poultry than that which it received from them. There was testimony to be sure that the larger part of this poultry came from Indiana and Illinois, and had been killed there; but there was nothing to show that this fact was or should have been known to the defendant, or that any part of the poultry came from cold storage. The ham used by the defendant was bought from a large dealer in meats ready cooked, one ham each day, according to its evidence; its coffee was of a good grade and made on the premises. There was evidence also of strict inspection by the defendant of the food supplies that it received from the dealers, and of great care and cleanliness in the preparation of the food sold by it; that whatever was left unsold at the end of each day was not afterward served to customers, but was thrown away, and that the defendant's premises were carefully kept clean and sweet. Of course all or any part of this evidence might have been disbelieved; but a failure to accept the defendant's evidence of its care and diligence and of the precautions that it had used could not take the place of evidence of negligence on its part.

"In Bishop v. Weber, 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715, which was decided upon demurrer, the defendant's liability was rested upon the averments of his negligence. That it is necessary in an action like this to aver and prove negligence in the defendant was expressly decided in Sheffer v. Willoughby, 163 Ill. 518, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 483. The decision in Roberts v. Anheuser Busch Brewing Ass'n, 211 Mass. 449, 98 N. E. 95, turned upon the falsity of representations made by the defendant.

'The defendant asks us to order judgment in its favor, under the provisions of St. 1909, c. 236; but the terms

of the report require that a new trial should be had."

In Lamb v. Boyles, 192 N. C. 542, 135 S. E. 464, 49 A. L. R. 589, cited by this Court with approval in Johnston v. Swift & Co., 186 Miss. 803, 191 So. 423, the Court said:

"The plaintiff alleges that on December 11, 1925, he bought from the Amazon Cotton Mill Cafe a bottle of strawberry ale, which the defendant had manufactured and placed on the market; that the bottle contained some kind of noxious substance; that, while drinking the ale, he was taken sick and, in consequence, was confined to his bed for several days; that his vision was impaired; that, for many weeks, he was unable to do his usual work; that the defendant negligently prepared and sold an unwholesome drink; and that the defendant's negligence was the direct cause of the plaintiff's injury. In the answer, the material allegations in the complaint are denied, and it is alleged that all known precautions were applied to sterilize the bottles, and that the bottle in question did not contain anything that was pernicious or harmful.

"There is an allegation in the complaint that the ale was prepared for use as a beverage, and that there was an implied warranty of its quality; but the basis of the action is the alleged negligence of the defendant in putting the ale into a bottle containing a deleterious substance. As shown by the issues, the case was tried upon this theory; and, when a party has elected to try his case on a particular theory, he may not change his position with respect to it when the case is heard in the appellate court. Walker v. Burt, 182 N. C. 325, 109 S. E. 43.

"The chief assignment of error is addressed to the refusal of the trial court to dismiss the action as in case of nonsuit. Testimony offered by the plaintiff as to other alleged acts of negligence on the part of the defendant was held not to be admissible as substantive evidence on the first issue, and, as such, it was accordingly excluded.

The motion for nonsuit was made to rest, not on the ground of the defendant's nonliability if he was negligent, but on the ground that the admitted evidence does not show actionable negligence. Ramsey v. Standard Oil Co., 186 N. C. 739, 120 S. E. 331; Cashwell v. Fayetteville Pepsi-Cola Bottling Works, 174 N. C. 324, 93 S. E. 901; Ward v. Morehead City Sea Food Co., 171 N. C. 33, 87 S. E. 958; Dail v. Taylor, 151 N. C. [284], 285, 66 S. E. 135, 28 L. R. A., N. S., 949; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 S. Ct. 270, 53 L. Ed. 453; 26 C. J. 784, § 92 et seq.

"The evidence most favorable to the plaintiff tends to show that, after drinking about half of the ale, he became sick, went outside the cafe, vomited, was carried home, was not able to work, suffered from impaired eyesight, and for one or two days was blind. There was no analysis of the ale, no direct evidence of any foreign matter, no specific indication of any poison. Negligence is not presumed from the mere fact that the plaintiff was injured (Isley v. Virginia Bridge & Iron Co., 141 N. C. 220, 53 S. E. 841), and there is no evidence of a latent defect actually or constructively known to the defendant. In the absence of more definite evidence of negligence, the plaintiff resorts to the doctrine founded on the maxim res ipsa loquitur, insisting that the circumstances of his sickness were of such a character as would justify a jury in inferring negligence as the cause of his condition.

" 'The rationale of the doctrine is that in some cases the very nature of the occurrence may, of itself, and through the presumption it carries, supply the requisite proof; it is applicable when, under the circumstances shown, the accident presumably would not have happened, if due care had been exercised. The essential import is that, on the facts proved, the plaintiff has made out a prima facie case without direct proof of negligence.' Labatt on Master and Servant, § 843.

"Several courts have held, in effect, that the doctrine is not applicable to such facts as were developed in this

case. Proof of personal injury resulting from the use of an article sold or manufactured does not, of itself, make a case of negligence against the seller or the manufacturer. 20 R. C. L. 94. Ordinarily, other elemental facts are essential. This was pointed out in Dail v. Taylor, 151 N. C. [284], 285, 66 S. E. 135, 28 L. R. A., N. S., 949. There the court declined to apply the maxim to proof of an injury caused by the explosion of a Coca-Cola bottle charged with gas, Hoke, J., remarking that the facts presented a case where it would be entirely unsafe to permit the application of the principle, or to hold that the explosion of one bottle should rise to the dignity of legal evidence sufficient, without more, to carry the case to the jury. The principle is maintained in the later case of Cashwell v. Fayetteville Pepsi-Cola Bottling Works, 174 N. C. 324, 93 S. E. 901. See Saunders v. Norfolk & W. R. Co., 185 N. C. 289, 117 S. E. 4, 29 A. L. R. 1258.

" In Goldman & Freiman Bottling Co. v. Sindell, 140 Md. 488, 117 A. 866, cited by the plaintiff, the evidence disclosed broken glass in the bottle, and the question was whether proof of the glass was evidence of negligence. Questions somewhat similar were presented in Boyd v. Coca Cola Bottling Works, 132 Tenn. 23, 177 S. W. 80; Crigger v. Coca-Cola Bottling Co., 132 Tenn. 545, 179 S. W. 155, L. R. A. 1916B, 877, Ann. Cas. 1917B, 572, and Birmingham Chero-Cola Bottling Co. v. Clark, 205 Ala. 678, 89 So. 64, 17 A. L. R. 667. The Massachusetts Supreme Judicial Court has said that the mere presence of a small, flatheaded black tack in a blueberry pie, served to a patron by the keeper of a restaurant, does not, under the rule res ipsa loquitur, establish negligence on the part of the keeper, although the pie was made on his premises. Ash v. Childs Dining Hall Co., 231 Mass. 86, 120 N. E. 396, 4 A. L. R. 1556.

"In the case at bar, there is no evidence that any foreign substance was discovered in the ale or in the bottle. It is too plain for argument that more than one infer-

388

ence may be drawn from the evidence as to the cause of the plaintiff's sickness; and, under the circumstances disclosed, as suggested in Dail v. Taylor, supra, it would be unsafe to permit the plaintiff to avail himself of the doctrine that the 'thing itself speaks.' The defendant's motion to dismiss should have been allowed.''

The negligence of the appellees is not established by the testimony offered by appellant or by any reasonable inference that the jury might reasonably draw therefrom, within the limitations of the rule above set out.

But, appellant urges that the doctrine of res ipsa loquitur applies here. This Court has firmly planted itself to the contrary in Johnston v. Swift & Co., 186 Miss. 803, 191 So. 423, 425, where the Court, speaking through McGehee, J., said:

''In other words, if it be assumed that the sausage which was eaten by the appellant was in fact the proximate cause of his illness, there is still no proof that the manufacturer was negligent in the manner of its preparation and manufacture for sale, the doctrine of res ipsa loquitur not being applicable.

''There was no foreign object or deleterious substance found in the can when it was opened, and the appellant was unable to detect anything whatever wrong with the sausage in question when he cut the links into pieces with his knife before eating it for breakfast. Therefore, the rule announced in Pillars v. R. J. Reynolds Tobacco Co. et al., 117 Miss. 490, 78 So. 365; Blount v. Houston Coca Cola Bottling Co., 184 Miss. 69, 185 So. 241, is in our opinion not applicable here. In those cases the product sold contained a foreign substance such as would have entitled the jury to reasonably infer that its presence was most likely due to the manufacturer. But we are unable to apply the doctrine of res ipsa loquitur to the facts in the present case. In other words, negligence of the manufacturer is not presumed from the mere fact that the food purchased may have caused the illness of the consumer, Lamb v. Boyles, 192 N. C. 542,

135 S. E. 464, 49 A. L. R. 589; Sheffer v. Willoughby, 163 Ill. 518, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 483.''

■■ There is no claim that there was any foreign matter in the corned beef that a reasonable inspection by the appellees would disclose. We cannot say without proof or a proper inference from the proof that the small microscopic bacteria causing ptomaine poisoning could not have entered the corned beef except for a negligent violation of the duty on the part of the operators of the restaurant. Bacteria has entered food in well regulated and well supervised homes so frequently that it has been within the experience or observation of practically every one. Bacteria is not to be seen with the naked eye or necessarily observed by any of the senses. Some classes of bacteria are helpful and some are harmful when taken into the human system. But, whether helpful or harmful, their presence would not be revealed by reasonable inspection. This Court has definitely held in Johnston v. Swift & Co., supra, that the doctrine of res ipsa loquitur does not apply to germs or bacteria in food, and we think this decision sound and approve the holding there.

■■ Appellant seems to further contend that there was an implied warranty on the part of the restaurateur that the food was wholesome, and that the tort here arises out of the breach of contract, which he waives to sue in tort. We think it a complete answer to this argument that in the first place there was never any implied warranty to Mrs. Goodwin that the food served her husband was free from injurious bacteria and fit for human consumption. That implied warranty ran only to Mr. Goodwin as to the food served him. Hence, any implied warranty running to Mrs. Goodwin cannot be sued on by Mrs. Goodwin unless it survived his death. She does not sue on any implied warranty but sues on negligence. The implied warranty to Mr. Goodwin did not survive him, but was terminated by his death. Now if no implied warranty ever ran in favor of Mrs. Goodwin, and if the implied warranty that ran in favor of Mr. Goodwin did not sur-

vive Mr. Goodwin, as was expressly held in Hasson Grocery Company v. Cook, supra, then there is no implied warranty available to Mrs. Goodwin upon which she can sue, or which she can waive and sue in tort. This brings us back to where we started,—a declaration basing the suit on negligence, which it was necessary for Mrs. Goodwin to both allege and prove. She has alleged it, but she has not proven it by evidence or by any reasonable inference from evidence and her case must necessarily fall.

Admitting as true all of the evidence offered by the plaintiff, and drawing all reasonable inferences therefrom that a jury might have reasonably drawn, it was insufficient to support any finding that the germ got into the corned beef served Mr. Goodwin by any violation of any duty the operators of the cafe owed him as their customer. The judgment of the lower court is affirmed.

Affirmed.

**Hall, Justice** (dissenting).

Someone has said that if several men on the same job agree all the time, all but one of them are useless. In this we may find some consolation in those instances when the members of this court are not unanimous in their decisions. In this case I am impelled to register my dissent to the conclusions reached in the controlling opinion.

Much is said regarding the pyramiding of inferences and it is sought to show that the plaintiff's case here depends upon a chain of inferences, and does not find support by proof in the record. It is stated that the plaintiff should have offered evidence to prove those things that could have been proved by direct and demonstrative proof, and the opinion then proceeds to say that whether Mr. Goodwin ate or drank anything between the time he left the Belmont Cafe and the time when he was visited by Dr. Copeland was a fact capable of direct and demonstrative proof, and the opinion infers that no

proof was offered on this point. On page 40 of the record, Mrs. Goodwin testified that neither she nor her husband ate anything after they left the restaurant. On pages 42-43 she testified, "Mr. Goodwin never had a drop of water or anything in his mouth after we left the Belmont Cafe until he became violently ill." She testified that they both became ill within an hour and a half or two hours after leaving the cafe. I am unable to comprehend how there could be any more positive and direct proof of a proposition than is here shown. Mrs. Goodwin's testimony is not disputed and stands absolutely uncontradicted in the record.

It is next stated in the controlling opinion that the fact whether the matter vomited up by Mr. Goodwin contained corned beef that was infected by poisonous bacteria was also one capable of direct and demonstrative proof by a chemical analysis. It would seem that the court is holding that no proof short of a chemical analysis will suffice. In this case every symptom of ptomaine poisoning was proved without contradiction; the physican saw the patient, observed his symptoms, diagnosed his case as ptomaine poisoning, and testified positively that this was the cause of his death. So far as I can find there is no reported case on food poisoning which holds that a chemical analysis of the food is necessary. On the contrary, in the case of Bark v. Dixson, 115 Minn. 172, 131 N. W. 1078, 1079, Ann. Cas. 1912D, 775, which was a suit for damages as a result of food poisoning, the court said: "It is stated by defendants, and correctly, we think, that it was necessary for plaintiff to prove by a fair preponderance of the evidence that the meat was tainted, and that plaintiff's illness was the result of eating it. Defendants, however, contend that there was no evidence to sustain a finding in plaintiff's favor on either of these questions. It seems to be the opinion of counsel for defendants that, because there was no chemical analysis of the meat or of the waste, there was no proper evidence of its tainted or poisonous condition. But it does not take an entomologist

or bacteriologist to discover that a beefsteak is rotten and unfit for food." See also Blount v. Houston Coca Cola Bottling Co., 184 Miss. 69, 185 So. 241, hereinafter discussed. Analyzing further the position of the court on this proposition as expressed in the controlling opinion, just when should the plaintiff have made a chemical analysis of the corned beef here in question? Can it be that before eating in the restaurant she was obligated to carry along a chemist to analyze and inspect each particle of food served her? If so, then we wipe out from the law the duty of a restaurateur to exercise reasonable care in the preparation of the food for his customers. Or, was it necessary that when her husband was writhing in pain from ptomaine poisoning, and she, too, was in the same situation, she should sterilize some vessel and procure for a chemist's laboratory a specimen of the effluence vomited from his stomach or the excreta from his alimentary canal? The controlling opinion cites no case so holding, and such a rule is so shocking that I am unable to assent to it in view of the fact that every symptom of ptomaine poisoning was proved without dispute and the expert medical testimony shows conclusively that Mr. Goodwin died as a result thereof. There are many infectious diseases which can be diagnosed positively and accurately from symptoms alone without a chemical analysis or a laboratory examination. Certainly in a case of this character it is not necessary for the plaintiff in obtaining proof as the basis of her suit to invade the sanctity of the silent city of the dead and exhume the body of deceased and submit it to a post-mortem examination and produce therefrom some of the germs which the attending physician said caused his death. Such a procedure would add little, if anything, of probative value to that which has been proved in this case. The presence of ptomaine poisoning resulting in death was shown without dispute. It is not necessary to indulge any inference whatsoever that there were germs in the corned beef. Mrs. Goodwin's testimony established without dispute that the corned beef

did not taste right, and her proof excluded other potential sources of infection; this was sufficient to raise not a mere possibility, but rather a strong probability that Mr. Goodwin acquired the bacteria from eating the corned beef and up to this point it is not necessary to add one inference to another in the proof of plaintiff's case. Reasonable probabilities are all that the law of negligence requires; in no negligence case has it ever been held that facts must be established by conclusive evidence.

In Great Atlantic & Pacific Tea Co. v. Hughes, 131 Ohio St. 501, 3 N. E. (2d) 415, 416, plaintiff purchased some pork sausage from defendant. In an hour or two she cooked and ate some of it, and later in the day she became violently ill, manifesting the same symptoms as were shown in the case at bar. Plaintiff recovered a judgment which was affirmed by the Court of Appeals, and upon appeal to the Supreme Court of Ohio that court said: "The diagnosis of the attending physician was 'food poisoning or food infection.' He made no bacteriological analysis or examination, either of the sausage or the stool or contents of plaintiff's stomach, but based his diagnosis and his testimony at the trial upon the symptoms observed by him and the history of the case and development of conditions related to him . . . That the sausage caused plaintiff's illness may be properly inferred from the fact which the evidence tends to show that other persons had partaken of the same food as did plaintiff, with the exception of the sausage, for the full period during which poisoning from food would develop. That the sausage caused such illness in one whom the evidence tends to show was in a natural and normal condition, with presumably natural and normal functions of the body, in the absence of evidence to the contrary, is surely some proof that the sausage was unwholesome and deleterious to health. This is not a situation where inference is based upon inference, but separate and distinct inferences drawn from facts proven or presumed to exist in the absence of adverse evidence . . . The

judgment is not contrary to law and is therefore affirmed.''

It is next stated in the controlling opinion that the fact as to whether the poisoning bacteria got into the corned beef through lack of care on the part of the restaurateur is also capable of direct and demonstrative proof. As an abstract proposition that position may be technically correct, but we are at once confronted with the question whether the plaintiff is required to prove negligence by direct and positive proof such as may be afforded by calling as a witness some employee from defendant's kitchen, or whether the same may be proved by circumstantial evidence or may be aided by well recognized legal presumptions. Numerous authorities are cited in the controlling opinion which involve the question of liability in damages on the part of one who prepares and serves food, but only one Mississippi case is cited on the point. These will be discussed hereinafter, but let us first view the unsettled state of the law in the various jurisdictions of this country as to what is necessary to make out a case of negligence and follow with a consideration of the Mississippi cases on the subject. There are three different views of the matter, and these are pointed out in 22 Am. Jur., Food, Sec. 115, where it is said: ''Presumption or Prima-Facie Case from Proof of Illness.—Where a negligence action is brought to recover damages for injuries alleged to have resulted from the eating or drinking of unwholesome food or beverage, the burden is upon the plaintiff to establish carelessness or negligence. According to one line of authorities, mere proof of the facts of eating the food or drinking the beverage and of illness thereafter is not sufficient to make a prima-facie case against the seller or the one preparing such food or beverage and does not shift the burden on the one selling or preparing it of going forward with the evidence to establish due care. Other authorities take the view that proof of the fact of eating an unwholesome food or drinking an unwholesome beverage is per se evi-

dence of negligence on the part of the person selling or preparing the same. Still others take the view that while proof of eating the food and of consequent illness will not, without more, establish negligence, if the plaintiff establishes the eating, the consequent illness, and the unwholesome quality of the food, a prima-facie case is made out.''

The case of Johnston v. Swift & Co., 186 Miss. 803, 191 So. 423, 425, relied upon in the controlling opinion, is so different on the facts that it can have no earthly application here. There the sausage was prepared by the manufacturer and placed in hermetically sealed cans in a distant state long before it was consumed by Johnston; here the corned beef was prepared and served on the spot by appellees in their own place of business; there the product was such that it required constant refrigeration to prevent spoilage, and it was shown to have passed through the hands of an intermediate wholesaler with no proof as to whether it had been kept under refrigeration while in the wholesaler's possession in its warehouse or on its delivery truck while being transported on a hot August day some 75 miles away to a retail establishment; here the corned beef did not pass through any intermediate hands; there the can of sausage was opened with a can-opener and removed from the can with an ice-pick, both of which instruments were lying around the retail store and exposed to contamination, and then the links were cut into pieces with plaintiff's knife; here the food was served upon plates furnished by the defendants and transferred from plate to mouth by instruments furnished by defendants; there the sausage looked, smelled, and tasted all right; here the corned beef did not taste right; there both husband and wife ate some of the sausage with the result that thereafter the husband became sick while the wife did not; here both husband and wife ate the corned beef and both became violently ill with fatal results to the husband; there what remained of the sausage was still in the possession of the husband and wife in their store; here what remained of the corned beef

was in possession of the defendants; there the plaintiff left the sausage under a store counter in the month of August for a period of ten days, without any refrigeration as required by the label on the can, and then inspected this perishable commodity for the first time and found that a portion of it contained decomposed and unwholesome animal matter. In the opinion in the Johnston case this court clearly recognized that it had previously applied the doctrine of res ipsa loquitur in cases of contaminated articles prepared for human consumption, citing two cases which will be hereinafter mentioned, but it then said, ''But we are unable to apply the doctrine of res ipsa loquitur *to the facts in the present case.*'' (Italics supplied.) In my judgment the Johnston case is no authority for an exclusion of that doctrine in this case, but clearly preserves it for application in appropriate cases which might thereafter arise.

It may be well to here restate the rule, which is that proof that the thing which caused the injury to plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence that the injury arose from or was caused by the defendant's want of care, makes out plaintiff's prima-facie case, and presents a question of fact for defendant to meet with an explanation. 38 Am. Jur., Negligence, Sec. 295. In this case the defendant was not called upon by the trial court to explain anything, for the court sustained a motion to exclude and peremptorily directed a verdict for defendants at the close of plaintiff's evidence. The aforementioned doctrine is applied in food cases by many courts. In 36 C. J. S., Food, § 69, it is said: ''The burden of proving defendant's negligence in food cases so as to make out a prima-facie case is often held satisfied by proof of circumstances raising a presumption or inference of negligence under the doctrine of res ipsa loquitur. Where this doctrine is applied two factors are

generally present: (1) The immediate cause and the circumstances of the misadventure are such as would not have happened in the ordinary course of events if the person charged had used due care; (2) The manufacturer or dispenser is in a better position to know how the food was handled, the consumer not being presumed to have such knowledge as to enable him to prove the specific acts of negligence.''

Applied to the case at bar the foregoing fits like a glove. In the normal and ordinary course of events the bacteria which produce ptomaine poisoning will not find their way into food which is prepared and served to the public, and should not have been permitted to contaminate the food which was indisputably served to Mr. and Mrs. Goodwin. The defendants are in a better position to know how the food was handled, and should be called upon to explain away the plaintiff's prima-facie case; the defendants should know where they obtained the ingredients which went into this corned beef and how long and under what circumstances they had kept it; they should know who prepared it and what kind of care he used in so doing; they should know what sources of infection, if any, exist around their kitchen; these are all matters peculiarly within the knowledge of the defendants and almost exclusively within the power of defendants to elucidate with proof, yet the trial court and the controlling opinion herein hold that defendants should not have to explain anything, but that the plaintiff should have had a witness in the kitchen while this food was being handled and prepared and before she and her husband ever entered the establishment for a meal. In my opinion such a holding is supported by neither reason nor precedent.

Coming now to the decisions of this court upon the question under consideration, in Pillars v. R. J. Reynolds Tobacco Co., 117 Miss. 490, 78 So. 365, there was involved a claim for damages on account of negligence in the manufacture of chewing tobacco which contained deleterious matter resulting in ptomaine poisoning to the plaintiff.

Without mentioning res ipsa loquitur this court applied the doctrine and held that proof of contamination of the tobacco was sufficient to raise a presumption of negligence and carry the case to the jury for the decision.

The Pillars case was cited with approval, and numerous authorities from other jurisdictions were also cited by this court in Blount v. Houston Coca Cola Bottling Co., 184 Miss. 69, 185 So. 241, 242, which was a suit for damages on account of negligence in the manufacture of a bottle of Coca Cola containing a deleterious substance. In that case the bottle was sent for analysis to the State Chemist and his report was offered in evidence without producing him as a witness; the report was excluded on the ground that it was unsworn hearsay evidence, and this court held that such action was proper, but without any chemical analysis it was held: "It is true that the plaintiff, suing alone in tort, was required to prove negligence; but this does not mean that a witness or witnesses must be produced to say that the Coca Cola plant was being negligently operated at the time the foreign or deleterious substance was bottled up in the drink before it was capped and sold to the retailer. It was a question for the jury as to whether negligence might reasonably be inferred from the facts disclosed. The doctrine of res ipsa loquitur applies in such a case."

The case of Coca Cola Bottling Works, Inc., of Columbus v. Petty, 190 Miss. 631, 200 So. 128, 130, decided after Johnston v. Swift & Co., supra, involved a claim for damages because of negligence in permitting animal matter to get into a bottle of Coca Cola during the course of its manufacture, and this court said: "If this animal matter was in this bottle, the jury, under the maxim res ipsa loquitur, were warranted in believing that it got into the bottle through the negligence of the appellant's employees. The court therefore committed no error in refusing appellant's request for a directed verdict." Notwithstanding the fact that this court has applied the rule of res ipsa loquitur in at least three similar cases,

and has held that in such cases a peremptory instruction is not proper but that the matter should be left to a jury for decision, it is now held in the case at bar that a peremptory instruction was proper even without requiring the defendants to offer one word of proof. Such a holding, in my opinion, does not square with the previous decisions of this court. There is not one thing in the Johnston case to justify the assertion that the doctrine of res ipsa loquitur does not apply to germs or bacteria in food; it merely held that the doctrine had no application under the particular facts of that case as hereinabove detailed. Since this case is purely one of negligence, no reference has herein been made to those Mississippi cases based upon implied warranty.

Let us now examine the authorities from other jurisdictions cited in the controlling opinion, bearing in mind that there is a hopeless conflict in the various jurisdictions as to the applicable rules in a case of this type.

Sheffer v. Willoughby, 163 Ill. 518, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 483, originated in 1891, long before the development of the modern decisions in cases of food poisoning. In that case, however, the plaintiff and her friend were made sick from eating oyster stew in defendant's restaurant during a noon hour when between 800 and 900 other people ate of the same stew without ill effects. Illinois does not recognize the application of the doctrine of res ipsa loquitur in food cases, while Mississippi does recognize it, and the Illinois court held that the plaintiff had the burden of proving negligence and had failed in her proof. The case is clearly distinguishable from the present case.

Crocker v. Baltimore Dairy Lunch Company, 214 Mass. 177, 100 N. E. 1078, Ann. Cas. 1914B, 884, comes also from a state where res ipsa loquitur has no application in food poisoning cases, but in that case the court did not exclude plaintiff's evidence showing illness resulting from food eaten in defendant's restaurant. Instead, it required the defendant to offer its proof as to the sources of its supply,

how its food was handled, etc., which was not done in the case at bar. After a verdict for plaintiff the defendant appealed and the Supreme Judicial Court of Massachusetts, while reversing and remanding the case for a new trial, declined to enter judgment for defendant upon the record thus presented. It is at least authority for the position that the case here should have been submitted to the jury, and that the trial court erred in declining so to do.

Lamb v. Boyles, 192 N. C. 542, 135 S. E. 464, 465, 49 A. L. R. 589, cited in the controlling opinion, is a case in which the plaintiff merely proved that he drank a bottle of strawberry ale prepared by the defendant and became sick; the court pointed out that "There was no analysis of the ale, no direct evidence of any foreign matter, no specific indication of any poison." The plaintiff apparently did not offer any physician to show that his trouble was caused from ptomaine poisoning, nor any evidence to exclude other sources of infection, as was done in the case at bar. The plaintiff there simply failed to show enough facts to raise a prima facie presumption. Furthermore, the North Carolina court declined to apply the doctrine of res ipsa loquitur while recognizing that it has been applied by many courts.

The last three cases mentioned herein are the only ones from other jurisdictions which are cited in the controlling opinion except those cited in these three cases. As heretofore suggested, since Mississippi has committed itself to the rule herein urged, authorities from other states are of no value in deciding the question now before us except, perhaps, to show that this state is not a lone wolf on the subject and is supported by respectable authorities elsewhere. It would extend this opinion to undue lengths to discuss all the authorities, but some of them are: Greenwood Cafe v. Lovinggood, 197 Ala. 34, 72 So. 354; Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 40 L. R. A., N. S., 480, Ann. Cas. 1913B, 1110; McPherson v. Capuano & Co., 31 Ga. App. 82, 121 S. E. 580; Cope-

land v. Curtis, 36 Ga. App. 255, 136 S. E. 324; Steele-Smith Dry Goods Co. v. Blythe, 208 Ala. 288, 94 So. 281; Davis v. Van Camp Packing Co., 189 Iowa 775, 176 N. W. 382, 17 A. L. R. 649; Minutilla v. Providence Ice Cream Co., 50 R. I. 43, 144 A. 884, 63 A. L. R. 334; Armour & Co. v. Miller, 39 Ga. App. 228, 147 S. E. 184; Doyle v. Continental Baking Co., 262 Mass. 516, 160 N. E. 325; Nelson v. West Coast Dairy Co., 5 Wash. (2d) 284, 105 P. (2d) 76, 130 A. L. R. 606; Armour & Co. v. Leasure, 177 Md. 393, 9 A. (2d) 572, a corned beef case; Schuler v. Union News Co., 295 Mass. 350, 4 N. E. (2d) 465; Campbell v. G. C. Murphy Co., 122 Pa. Super. 342, 186 A. 269; Picard v. Smith, 59 App. D. C. 291, 40 F. (2d) 803; Barringer v. Ocean S. S. Co., 240 Mass. 405, 134 N. E. 265; Southern Grocery Stores v. Donehoo, 59 Ga. App. 212, 200 S. E. 335; Amabile v. Kramps, 121 N. J. L. 219, 2 A. (2d) 178; Flessher v. Carstens Packing Co., 93 Wash. 48, 160 P. 14, 13 N. C. C. A. 173; Bark v. Dixson, 115 Minn. 172, 131 N. W. 1078, Ann. Cas. 1912D, 775; Catani v. Swift & Co., 251 Pa. 52, 95 A. 931, L. R. A. 1917B, 1272.

A great many of the foregoing authorities are cases of food poisoning, usually ptomaine poisoning, from unwholesome food which contained no foreign object except the bacteria, and are directly contrary to the holding in the controlling opinion herein that the doctrine of res ipsa loquitur does not apply to germs or bacteria in food. Regardless of the application of that doctrine it was held repeatedly in many of the above cases that negligence may be presumed from evidence that a party was rendered ill from eating food, where other sources of infection are excluded, or where other parties were made ill at the same time from eating the same food. We do not quote from those cases, for this is unnecessary since we already have ample precedent from the decisions of our own court heretofore mentioned.

In the controlling opinion it is admitted, as it must be, that in determining the right of a defendant to a

peremptory instruction, the court must assume as true everything which the evidence establishes either directly or which the jury might reasonably draw from such evidence. But it is the further rule that every case should be submitted to a jury for their determination if reasonable men might draw different conclusions from the state of facts presented. Fraternal Aid Union v. Whitehead, 125 Miss. 153, 87 So. 453; Jefferson Standard Life Insurance Company v. Jefcoats, 164 Miss. 659, 143 So. 842. Upon the facts here presented the members of this court, presumably reasonable men, have drawn different conclusions, which, in itself, is authority for the position that this case should have been submitted to a jury for decision. Our statute specifically provides that all questions of negligence shall be for the jury to determine. Section 1455, Mississippi Code of 1942. Consequently I am of the opinion that the trial court erred in taking the case from the jury and that the judgment should be reversed and the cause remanded for a trial on the merits.

**McGehee, C. J.**, and **Roberds, J.**, join in this dissent.