ARMOUR & CO. v. MCMILLAIN.

(Division A. June 5, 1934. Suggestion of Error Overruled Oct. 1, 1934.)

[155 So. 218. No. 31207.]

W. C. Kirk, of Chicago, Illinois, and Wilbourn, Miller & Wilbourn, of Meridian, for appellant.

F. F. Mize and J. O. Eastland, both of Forest, and Mize, Thompson & Mize, of Gulfport, for appellee.

Argued orally by C. C. Miller, for appellant, and by S. C. Mize, for appellee.

Cook, J., delivered the opinion of the court.

Appellee instituted this suit against Armour & Company seeking to recover damages for illness and continued ill health alleged to have resulted from eating poisoned sausage manufactured and packed by appellant. The suit was for the sum of two thousand nine hundred ninety-nine dollars and ninety-nine cents, and the verdict returned was for that exact amount.

The appellant is engaged in packing and selling meats, including sausage. On June 19, 1933, it sold and delivered a fifty-pound sealed tin can containing sausage packed in oil to a wholesale grocer in Forest, Mississippi, who in turn sold it to a retail dealer, and delivered it at his place of business between three and five o'clock on June 21, 1933. When the retail dealer received the can, he, or his assistant, cut off the top of the can with an ordinary can opener, which was used in the store and in an adjoining kitchen. On removing the top of the can, the dealer covered it with a tin top which the appellant had forwarded with the can for that purpose, and placed the can on a counter in the store. In taking the sausage from the can, the wife or stepdaughter of the dealer, who usually waited upon the customers, either used their hands or a silver or other metal fork. Neither the can opener nor this fork was so handled as to exclude the probability of bacterial infection that would cause meats to become unwholesome for human consumption.

The evidence for the appellee was to the effect that about six o'clock P. M. on June 21, 1933, within about one hour after the can was first opened, the father of the appellee purchased five pounds of the sausage. This sausage was taken from the can with a silver fork used in the store, and was placed in a tin molasses can and covered with oil, which was dipped from the original can with a cup. The father of the appellee then carried the sausage to his home about five miles away, and about six-thirty P. M. the appellee and several others of the family ate some of it without cooking it. About an hour later the appellee became very sick. Other members of the family who had eaten some of the sausage became ill about the same time, but they recovered within a few hours. The appellee continued ill for several days before she consulted a physician. When the appellee had recovered sufficiently to travel, she visited a physician who prescribed for her and treated her on several occasions thereafter. This physician testified that when she first consulted him, she was suffering from indigestion and other stomach disorders which, in his opinion, were caused from acute botulism, or other food poison taken into the stomach when she ate the sausage in question, and that, in his opinion, her continued stomach trouble, nausea, and dizziness resulted from the same cause.

Several physicians and bacteriologists testified for the respective parties as to the conditions under which harmful bacteria may reach food and develop to the extent that the food would be poisonous or unfit for human consumption. The shortest period of time fixed by any of these experts within which harmful bacteria may, under ideal cultural conditions, develop poison or toxin sufficient to create illness, is at least six hours, and most probably twelve hours. They further testified that oil is a very poor medium of culture.

The legal principles which are applicable and controlling in this case are clearly and succinctly stated in the case of Cudahy Packing Co. v. Baskin (Miss.), 155 So. 217, this day decided, and we think the burden of proving a breach of the implied warranty in favor of the ultimate consumer, the appellee, has been met. We have already stated that the expert witnesses offered by the appellee fixed the minimum time within which harmful toxins or poisons may, under ideal conditions, be developed to be six hours, and in each instance they gave it as their opinion that it would probably require a longer time.

For the appellant, Dr. H. H. Harned, professor of bacteriology at Mississippi State College, testified that, under favorable conditions, sausage that had been contaminated with harmful bacteria would develop enough toxin within six to eight hours to be harmful to human beings. Dr. M. L. Laing, a bacteriologist of Chicago, Illinois, who is employed by the appellant, testified that it would require from twelve to twenty-four hours after harmful bacteria entered meat for them to develop any considerable portion of poisonous toxin.

The evidence offered by the appellee is to the effect that she ate the sausage within less than two hours after the can was opened, and that she became violently ill therefrom. If this were true, and it is undisputed, then, under the testimony of appellant's experts, as well as those for appellee, it was impossible for the toxic poison which caused her illness to have developed from deleterious matter which reached the sausage after the original package or can was opened. This evidence excludes the probability that the deleterious matter obtained entrance into the sausage after the can containing it was opened by the dealer, and, therefore, fully meets the burden of proving a breach of the warranty.

Among other assignments of error, the appellant con-

tends that the verdict of the jury is so excessive and disproportionate to any possible damages shown by the proof as to evince bias and prejudice on the part of the jury. We think there is merit in this contention. Considering the entire evidence bearing upon the nature and extent of appellee's illness, and the suffering and discomfort resulting therefrom, we are of the opinion that the verdict is so grossly excessive that it should not be permitted to stand. If the appellee will enter a remittitur of one thousand four hundred ninety-nine dollars and ninety-nine cents, the judgment will be affirmed for one thousand five hundred dollars; otherwise it will be reversed, and the cause remanded for the assessment of damages only.

Affirmed with remittitur.