CUDAHY PACKING CO. v. BASKIN.

(Division A. June 5, 1934.)

[155 So. 217. No. 31293.]

A. M. Pepper and Johnson & White, all of Lexington, for appellant.

**C. E. Thompson** and **Livingston & Milloy,** all of Prentiss, for appellee.

Argued orally by **H. H. Johnson** and **A. M. Pepper**, for appellant, and by **C. E. Thompson** and **W. H. Livingston**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellant is engaged in the packing and selling of meats, including sausage. It sold to a retail dealer a tin can containing sausage packed in oil; the can was hermetically sealed, and was not shown to have been broken when received by the dealer. After receiving the sausage, the dealer cut the top off of the can by means of a can opener used by him for such purpose in opening all canned goods received by him, including sardines and similar articles, when purchased by his customers who desired the immediate opening thereof. This can opener was not dealt with by him in such manner as to exclude the probability therefrom of germs that would cause meats to become unwholesome for human consumption. On removing the top of this can, the dealer covered the can with a tin top, which the appellant had forwarded with the can for that purpose, which top remained thereon except when removed by the dealer for the purpose of selling sausage therefrom. When selling the sausage the dealer would take it out of the can by means of an ice pick which, when not in use, was either on the top of the can or on a nearby shelf, which ice pick was also not so dealt with as to exclude the probability of germs deleterious to meat being thereon.

More than twenty-four hours after this can had been opened, and after several sales had been made therefrom,

the appellee purchased a small quantity of the sausage, which was taken from the can by means of the ice pick. Appellee ate the sausage a short time thereafter and became sick, her physician stating that she was suffering from acute botulism, an illness caused by the eating of food containing the germ known as claustralian botulinus.

This case is a companion one to Cudahy Packing Co. v. Rosetta McPhail, 155 So. 163, recently decided by this court; the sausage there being sold from the same can as here.

The producer of food for human consumption, who places it on the market to be thereafter sold by dealers, impliedly warrants to the ultimate consumer thereof that it was wholesome and fit for human consumption when started by the producer on its journey to him. The burden of proving a breach of this warranty is on the complaining party. When the food reaches the ultimate consumer in the original package in which it was placed by the producer, in such form, as sealed cans, bottles and other packages which we will not attempt to here classify, as to exclude the probability of deleterious matter obtaining entrance therein, the presumption is that the food is then in the same condition that it was when placed therein by the producer. See that line of cases decided by this court, exemplified by Rainwater v. Coca Cola Bottling Co., 131 Miss. 315, 95 So. 444; Curtiss Candy Co. v. Johnson, 163 Miss. 426, 141 So. 762; and Coca Coca Bottling Works v. Simpson, 158 Miss. 390, 130 So. 479, 72 A. L. R. 143.

If the food (in the same category with which is chewing tobacco) does not reach the consumer in the original package in which it was placed by the producer for the distribution by retailers, the burden is met by proof that the deleterious matter was in the food when it left the hands of the producer. Pillars v. R. J. Reynolds Tobacco Co., 117 Miss. 490, 78 So. 365, and R. J. Reynolds Tobacco Co. v. Stringer (Miss.), 103 So. 5. There is no

direct proof of such fact here. The evidence bearing on the entrance vel non of germs into the sausage after the can was opened by the dealer is, in addition to that hereinbefore set out, in substance, as follows: The usual and customary way in which the appellant prepares its sausage and places it in sealed cans for shipment excludes the probability and almost the possibility of germs that would thereafter render it unwholesome being therein prior to the opening of the can in which it was placed. There was no evidence as to how this particular sausage was prepared and placed in the can, except that all sausage was prepared and packed by the appellant in the same way. The sausage remaining in the can, after the sale therefrom to the appellee, was submitted to a chemical analysis by an expert who testified that he found no botulism germs therein, but did find germs of another type that could develop and render the meat unwholesome, but which when eaten would cause an illness of a milder type than botulism; that such germs could have been on the ice pick or can opener and have been introduced into the sausage thereby, and would develop rapidly, the length of time required for them to so develop as to render meat unwholesome depending on the number of germs therein, and the number thereof could be sufficient to so affect the meat in less than twenty-four hours.

If the appellee was suffering from acute botulism it would seem from this evidence that it was not produced by eating the sausage. However, we will assume that the jury would have been warranted in finding that her physician was mistaken as to that, and that she was in fact suffering from another form of ptomaine poisoning produced by the germs which the chemist found in the sausage; the question then is, Would the jury have been warranted in finding that these germs did not obtain entrance into the sausage after the can containing it was opened by the dealer? That the ice pick and the can opener could have been contaminated by germs, when no precautions were taken to exclude them therefrom, is such

a well-known fact that judicial notice can be taken thereof.

The evidence viewed most strongly for the appellee cannot be said to prove that the germs, from the effects of which she suffered, did not first obtain entrance into the sausage after the can containing it was opened by the dealer; at most, it can be said only to raise a probability that such was not the case. Such was the holding in Cudahy Packing Co. v. McPhail, supra.

The court below should have granted the appellant's request for a directed verdict.

Reversed, and judgment here for the appellant.