CHAMBERLIN, JUSTICE, FOR THE COURT:
 

 ¶ 1. Joe and Dianne McGinty sued Grand Casinos of Mississippi Inc.-Biloxi alleging negligence and breach of implied warranty of merchantability for serving unfit food. The trial court granted summary judgment in favor of Grand Casinos
 of Mississippi Inc.-Biloxi as to both claims. The Court of Appeals affirmed the trial court's grant of summary judgment as to the negligence claims, but reversed the trial court's grant of summary judgment as to the breach-of-implied-warranty claims. We granted certiorari. We affirm the judgment of the Court of Appeals, and we affirm in part and reverse in part the judgment of the circuit court.
 

 STATEMENT OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. According to their depositions, on September 20, 2004, Joe and Dianne
 
 [1]
 
 McGinty ate breakfast and a snack at their home in Brandon, Mississippi. That evening, they ate dinner at LB's Steakhouse
 
 [2]
 
 in Gulfport, Mississippi. They each had prime rib and a glass of wine with dinner. They then drove to the Grand Casinos of Mississippi, Inc.-Biloxi (Grand Casinos) in Biloxi, Mississippi. They gambled for several hours and drank more wine; however, they did not eat any more food. They went to bed between 10:00 p.m. and midnight.
 

 ¶ 3. The McGintys awoke early the next morning and ate breakfast at 5:30 a.m. at the Island View Café inside the Grand Casinos. Mr. McGinty ordered "Mama's Eggs and Chops," which included two grilled pork chops. Mr. McGinty took a bite of the pork chop and "didn't like it." Therefore, Mrs. McGinty finished the remainder from his plate.
 

 ¶ 4. Mr. McGinty testified that "somebody dropped the ball with ... that meat that we had." Counsel then asked, "Why do you think it was the meat? And when I'm talking about the meat, I'm talking about the pork chop." Mr. McGinty stated, "Because it tasted bad." On the other hand, Mrs. McGinty did not remember the pork chops "tasting funny." Mr. McGinty also was asked: "Do you think it's possible that you could have eaten somewhere-something else that did not-was not at Grand Casinos that caused you and [Dianne] to get sick?" Mr. McGinty replied, "No." When asked why he thought that, he stated:
 

 Because of the length of time that-it was the only thing I had eaten was up at the other Grand. So it was either-that prime rib, they-they're famous for-they were famous for prime rib. And the only thing that we had eaten was the next morning, and it tasted bad. You know, when you-it looked good, but it just tasted bad.
 

 ¶ 5. After breakfast, the McGintys rode in a limousine provided by the Grand Casinos to New Orleans, Louisiana. They each drank only water in the limousine. However, in the limousine, Mrs. McGinty began to feel nauseated, and she experienced diarrhea at the airport. They then caught a flight to Los Angeles, California. About an hour into the flight, Ms. McGinty began vomiting. Mr. McGinty also fell ill. He began to sweat profusely, feel nauseous, and become incontinent. The flight attendants gave him oxygen and moved the couple to the back of the plane. Mr. McGinty vomited and had diarrhea as well. The McGintys did not eat or drink anything on the airplane.
 

 ¶ 6. When the plane landed in Los Angeles, Mr. McGinty was carried off the airplane on a stretcher by emergency medical technicians. The McGintys were transported to a local hospital by ambulance. On the way to the hospital, Mrs. McGinty began
 to vomit a large amount of blood. At the hospital, she received two blood transfusions and was treated for an esophageal tear. Mr. McGinty was discharged from the hospital the same day, but Mrs. McGinty stayed in the hospital for three days. Mrs. McGinty stated no tests were conducted for food poisoning at the hospital.
 

 ¶ 7. Upon returning home, Mrs. McGinty saw her general doctor. Prior medical records from her general doctor show Mrs. McGinty had a history of digestive problems. Two months before the alleged food poisoning, her medical records noted that she suffered from "abdominal pain within 30 minutes after eating which is chronic/recurring frequently, ... [c]rampy/colicky abdominal pain, diarrhea 15-30 minutes after eating which is chronic." Further, Mrs. McGinty's medical records show that she had vomited blood in March 2003, which also occurred prior to the alleged food poisoning.
 

 ¶ 8. On October 18, 2004, Dr. Jerome Helman, Mrs. McGinty's treating physician from the California hospital, wrote a letter to Mrs. McGinty and enclosed her medical reports. In the letter, Dr. Helman stated Mrs. McGinty's "upper gastrointestinal bleeding was caused by the severe vomiting, which related to food and drink [she] had prior to the event."
 

 ¶ 9. On September 13, 2007, the McGintys filed suit in Harrison County Circuit Court against Grand Casinos for negligence and breach of the implied warranty of merchantability. In January 2012, Grand Casinos filed a motion for summary judgment, arguing the McGintys could not meet their burden of proof to establish a food-poisoning claim under Mississippi law. Grand Casinos argued the McGintys had failed to present lab analyses proving their illnesses were caused by tainted food eaten at Grand Casinos, and they had failed to offer sufficient medical-expert testimony on causation.
 

 ¶ 10. The trial court granted Grand Casinos' motion for summary judgment. The McGintys appealed. The Court of Appeals held the trial court's judgment, as it pertained to the McGintys' negligence claims, was proper because there was no genuine issue of material fact as to whether Grand Casinos had breached its duty of care. The Court of Appeals then reversed the trial court's judgment with respect to the breach-of-implied-warranty claims, holding sufficient evidence was presented to allow a jury reasonably to infer the food consumed by the McGintys at the Island View Café caused their illnesses. Grand Casinos filed a petition for certiorari, and we granted it.
 
 [3]
 

 STATEMENT OF THE ISSUES
 

 (1) Whether summary judgment was properly granted on the McGintys' negligence claim.
 

 (2) Whether summary judgment was properly granted on the McGintys' breach-of-implied-warranty-of-merchantability claim.
 

 STANDARD OF REVIEW
 

 ¶ 11. With a summary-judgment motion, the mover bears the initial burden of supporting the motion for summary judgment. Miss. R. Civ. P. 56. "When a motion for
 summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing that there is a genuine issue for trial." Miss. R. Civ. P. 56.
 

 ¶ 12. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). In other words, summary judgment is appropriate where the nonmoving party fails to "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."
 
 Buckel v. Chaney
 
 ,
 
 47 So.3d 148
 
 , 153 (Miss. 2010). The evidence is reviewed in the light most favorable to the nonmoving party, and the Court reviews the grant or denial of summary judgment de novo.
 
 Bennett v. Hill-Boren, P.C.
 
 ,
 
 52 So.3d 364
 
 , 368 (Miss. 2011).
 

 ANALYSIS
 

 (1) Whether summary judgment was properly granted on the McGintys' negligence claim
 
 .
 

 ¶ 13. The trial court and the Court of Appeals placed great weight on
 
 Goodwin v. Misticos
 
 ,
 
 207 Miss. 361
 
 ,
 
 42 So.2d 397
 
 (1949). In
 
 Goodwin
 
 , Mr. Goodwin, a restaurant patron, became ill within a few hours of eating corned beef.
 
 Goodwin
 
 ,
 
 42 So.2d at 397
 
 . Mr. Goodwin later was diagnosed with ptomaine poisoning and died as a result of his illness.
 

 Id.
 

 Mr. Goodwin's wife, Mrs. Goodwin, sued the restaurant for negligence.
 

 Id.
 

 at 397-98
 
 .
 

 ¶ 14. Mrs. Goodwin presented testimony regarding Mr. Goodwin's eating habits on the day he ate the corned beef.
 

 Id.
 

 at 398
 
 . She also testified that her corned beef did not "taste right," but Mr. Goodwin did not complain about his corned beef.
 

 Id.
 

 Further, she stated he became sick shortly after eating the corned beef.
 

 Id.
 

 Dr. Copeland testified "that ptomaine poisoning ... is a bacterial infection of the alimentary canal, carried there generally by eating food, drinking water, or something."
 

 Id.
 

 at 402
 
 . The trial court granted a directed verdict in favor of the restaurant.
 

 Id.
 

 at 399
 
 .
 

 ¶ 15. On appeal, the
 
 Goodwin
 
 Court considered what reasonable inferences could be drawn based on the proof presented.
 

 Id.
 

 at 400-03
 
 . The
 
 Goodwin
 
 Court stated, "[N]o such inference upon inference will be permitted to prevail when the fact sought to be established by such inference upon inference is capable of more satisfactory proof by direct, or positive or demonstrative, evidence, within the reasonable power of the party holding the burden to produce."
 

 Id.
 

 at 402
 
 . The
 
 Goodwin
 
 Court then analyzed the proof presented and what reasonable inferences could be drawn. It stated, "From the proof the jury could reasonably find: (1) That Mr. Goodwin ate the corned beef; (2) in one and one-half hours he became ill; and (3) from these two proven facts the jury could reasonably infer there was a germ in the corned beef that made him sick."
 

 Id.
 

 at 402
 
 . The
 
 Goodwin
 
 Court then concluded what could not be reasonably inferred: " We cannot from this inference draw another inference that the bacteria got into the food or drink as a result of the negligence of the restaurateur."
 

 Id.
 

 at 403
 
 . Therefore, the
 
 Goodwin
 
 Court affirmed the trial court's judgment.
 

 Id.
 

 ¶ 16. Here, the McGintys presented proof of the following: (1) they ate a pork chop at a Grand Casinos' restaurant, and Mr. McGinty testified it tasted bad; (2) hours after tasting the pork chop, they
 experienced vomiting and diarrhea; and (3) more than three weeks after they experienced these symptoms, a physician wrote Mrs. McGinty a letter, stating her prior symptoms were "related to food and drink [she] had prior to the event." The McGintys maintain that the instant proof establishes the causal connection required in a negligence suit.
 

 ¶ 17. However, based on the proof presented, the connection between the alleged contaminated pork chop and the illness and that the alleged contaminated pork chop was
 
 the result of
 
 Grand Casinos' action cannot be reasonably inferred. In other words, as in
 
 Goodwin
 
 , the McGintys have failed to make a prima facie case for negligence.
 
 Goodwin
 
 ,
 
 42 So.2d at 403
 
 .
 

 ¶ 18. Thus, we agree with the Court of Appeals that the evidence presented was insufficient to support the McGintys' claim of negligence. Accordingly, the Court of Appeals correctly affirmed the trial court's grant of summary judgment in favor of Grand Casinos on the McGintys' negligence claim(s).
 

 (2) Whether summary judgment was properly granted on the McGintys' breach-of-implied-warranty-of-merchantability claim.
 

 ¶ 19. An implied warranty of merchantability "provides that when a sale of goods is made, there is an implied warranty that the goods are merchantable if the seller is a merchant with respect to goods of that kind."
 
 Watson Quality Ford, Inc. v. Casanova
 
 ,
 
 999 So.2d 830
 
 , 833 (Miss. 2008) (internal quotation omitted). The elements of an implied-warranty claim are the following:
 

 (1) That a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and damages to the plaintiff or his property, (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury.
 

 Vince v. Broome
 
 ,
 
 443 So.2d 23
 
 , 26 (Miss. 1983).
 

 ¶ 20. In implied-warranty claims for nonmerchantable food, the cases turn on whether the evidence presented emerges from speculation and allows a reasonable inference to be drawn.
 
 See
 

 John Morrell & Co. v. Shultz
 
 ,
 
 208 So.2d 906
 
 (Miss. 1968) ;
 
 Newton Coca-Cola Bottling Co. v. Shaw
 
 ,
 
 236 Miss. 890
 
 ,
 
 112 So.2d 374
 
 , 375 (1959) ;
 
 Goodwin
 
 ,
 
 42 So.2d at 400
 
 . The Court of Appeals held that the that the evidence presented did create a jury question as to whether defective pork chops caused the McGintys' illnesses.
 
 McGinty v. Grand Casinos of Mississippi, Inc.-Biloxi
 
 , No. 2012-CA-01777-COA,
 
 245 So.3d 555
 
 , ----,
 
 2014 WL 1887548
 
 , *9 (Miss. Ct. App. May 13, 2014). We agree.
 

 ¶ 21. As explained above,
 
 Goodwin
 
 provides guidance for food-poisoning cases; however,
 
 Goodwin
 
 was a negligence case. In fact,
 
 Goodwin
 
 distinguished itself from a breach-of-implied-warranty case, stating, "It will be observed that this suit is not framed on any implied warranty ...."
 
 Goodwin
 
 ,
 
 42 So.2d at 398
 
 . However, as the Court of Appeals did, we look to
 
 Goodwin
 
 to begin our reasonable-inference analysis. Even in an implied-warranty case,
 
 Goodwin
 
 provides guidance regarding the dividing line between the proof needed for a negligence case versus the proof needed for an implied-warranty case.
 

 ¶ 22. As stated above, the
 
 Goodwin
 
 Court analyzed the proof presented and what reasonable inferences could be drawn. It stated, "From the proof the jury could reasonably find: "(1) [t]hat Mr. Goodwin ate the corned beef; (2) in one
 and one-half hours he became ill; and (3) from these two proven facts the jury could reasonably infer there was a germ in the corned beef that made him sick."
 

 Id.
 

 at 402
 
 . The
 
 Goodwin
 
 Court then stated what could not be reasonably inferred, "[w]e cannot from this inference draw another inference that the bacteria got into the food or drink as a result of the negligence of the restaurateur."
 

 Id.
 

 at 403
 
 . Notably, this final, unreasonable inference is
 
 not
 
 an element of a breach-of-implied-warranty claim.
 

 ¶ 23. Here, the McGintys presented evidence that (1) the pork chop "tasted funny," (2) a doctor opined that the illness was "related to food or drink,"
 
 [4]
 
 (3) the McGintys drank only water between eating the pork chop and becoming ill, (4) the McGintys both ate the same food and both became sick around the same time, and (5) the time between ingesting the pork chops and their illnesses was short in duration. With similar information, the
 
 Goodwin
 
 Court concluded a reasonable inference could be drawn by the jury that Mr. Goodwin got sick from the corned beef.
 

 Id.
 

 at 401 ;
 
 see also
 

 Masonite Corp. v. Hill
 
 ,
 
 170 Miss. 158
 
 ,
 
 154 So. 295
 
 , 299 (1934). Although, as mentioned above,
 
 Goodwin
 
 did not address a breach-of-implied-warranty claim, its guidance regarding reasonable inferences cannot be ignored. Therefore,
 
 Goodwin
 
 supports the McGintys' argument that they have presented enough evidence to survive summary judgment on their breach-of-implied-warranty claim.
 

 ¶ 24. Before we conclude, we think it pertinent to address the several cases within Mississippi that touch upon the issues before the Court today. Because the cases either support the holding we reach today or are distinguishable, we conclude summary judgment is not warranted for the breach of implied warranty claim.
 

 ¶ 25. First, in
 
 John Morrell & Co. v. Shultz
 
 ,
 
 208 So.2d 906
 
 (Miss. 1968),
 
 [5]
 
 the plaintiff sued
 
 [6]
 
 alleging that she became ill "as the consequence of eating a can of potted meat."
 
 Shultz
 
 ,
 
 208 So.2d at 906
 
 . After receiving a jury verdict in support of the plaintiff, the packing company appealed. The Court considered the evidence presented at trial and reversed the verdict.
 
 [6]
 
 Here,
 
 Shultz
 
 does not provide guidance, as it is distinguishable from the instant case for two main reasons. In
 
 Shultz
 
 , at trial, there was no testimony that the potted meat tasted or smelled strangely. Further, here there is also the added element that both the McGintys became ill after eating from the same pork chop.
 

 ¶ 26. Second in,
 
 Armour & Co. v. McMillain
 
 ,
 
 171 Miss. 199
 
 ,
 
 155 So. 218
 
 (1934), the manufacturer of the sausage
 was sued under a breach-of-warranty claim when the plaintiff became sick from eating the sausage.
 
 McMillain
 
 went to trial before an appeal.
 
 McMillain
 
 ,
 
 155 So. at 219
 
 . The main issue on appeal in
 
 McMillain
 
 was whether the manufacturer or the grocer (who opened the can and served it to customers) was at fault.
 

 Id.
 

 at 218
 
 . Thus,
 
 McMillain
 
 too is distinguishable from the instant case. Stated differently, the issue was not whether fault could be established for the allegedly defective sausage, but who-of two possible defendants-was at fault. While the question of who was at fault would not have been presented without first establishing that food poisoning
 
 caused
 
 the plaintiff's illness,
 
 McMillain
 
 did not address cause.
 
 [7]
 
 Thus, because causation was never an issue, judicial notice could have been taken of the contamination, and
 
 McMillain
 
 is unclear from where causation did arise,
 
 McMillain
 
 is materially distinguishable from the instant case and is not instructive.
 

 ¶ 27. Third, although not binding, we consider how Mississippi district courts have treated alleged food-poisoning cases. In
 
 Doss v. NPC Int'l, Inc.
 
 , No. 4:09CV38,
 
 2011 WL 754891
 
 (N.D. Miss. Feb. 24, 2011), the plaintiffs sued under a negligence theory. We hold
 
 Doss
 
 distinguishable for three main reasons. Like in
 
 Goodwin
 
 , the theory of negligence automatically distinguishes
 
 Doss
 
 from the instant issue.
 
 [8]
 
 Further, the plaintiffs suffered differing and inconsistent symptoms.
 
 Doss
 
 ,
 
 2011 WL 754891
 
 , **2-3. Additionally, as in
 
 Shultz
 
 , the whole case turned on the plaintiffs' bald claims regarding the food poisoning and the doctors' opinions; opinions which were based on the history related by the plaintiffs.
 

 Id.
 

 ;
 
 Shultz
 
 ,
 
 208 So.2d 906
 
 (Miss. 1968).
 
 See also
 

 Forehand v. Ryan's Family Steak House, Inc.
 
 , No. CIV.A.103CV672WJGJMR,
 
 2005 WL 1523381
 
 (S.D. Miss. June 28, 2005) (holding that merely the plaintiff's belief that the food was the source of his illness was not enough to survive summary judgment).
 

 ¶ 28. More on point with the instant case is a Southern District case,
 
 L.W. ex rel. Ware v. Tyson Foods, Inc.
 
 , No. 1:10CV330-LG-RHW,
 
 2011 WL 3476574
 
 (S.D. Miss. Aug. 9, 2011). In
 
 Tyson Foods
 
 , the plaintiff sued for breach of implied warranty after he became sick, allegedly from consuming hamburger meat.
 
 Tyson Foods, Inc.
 
 ,
 
 2011 WL 3476574
 
 , at *2. Another family member who consumed the meat became ill but did not seek medical attention.
 

 Id.
 

 The plaintiff sought medical attention, and his stool sample tested positive for bacteria.
 

 Id.
 

 Considering
 
 McMillain
 
 and
 
 Shultz
 
 , the fact that more than one family member became ill, and the test from the doctor, the
 
 Tyson Foods
 
 Court denied the summary judgment motion, despite the plaintiff's past stomach problems.
 
 Id.
 
 at *3. G i v e n t h e guidance in
 
 Goodwin
 
 and the additional caselaw outlined above, we hold that the McGintys presented enough evidence to survive summary judgment on their breach-of-implied-warranty claim. The evidence did not come in the form of a test, as in
 
 Tyson Foods
 
 , but a test is not necessarily required where there is
 
 additional
 
 evidence. Here,
 evidence was presented that the pork chop "tasted funny," a doctor's opinion that "the illness was related to food or drink," the fact that the McGintys drank only water between eating the pork chop and becoming ill and the fact that both of the McGintys became ill shortly after both eating from the same pork chop at the same time.
 

 ¶ 29. The dissent argues that the instant holding places Mississippi more in line with Tennessee's summary judgment standard. Further, the dissent continually interchanges their argument as to the form (in which the McGintys presented the medical opinion) and the substance of the medical opinion. We disagree on both points. The form of the medical opinion was never objected to, and is therefore waived. Further, the substance of the medical opinion is sufficient to withstand summary judgment. Thus, the decision reached today is not based on what "will, or might be developed later in discovery-or at trial."
 
 Glover v. Jackson State Univ.
 
 ,
 
 968 So.2d 1267
 
 , 1274 (Miss. 2007). It is based on the evidence before the court, and the collective effect of the evidence presented is enough for a jury reasonably to infer that the McGintys became ill from a defective pork chop. Therefore, while the evidence presented is not enough for a negligence claim, there is a line between a negligence claim and a breach of implied warranty claim, and this case, in the words of Johnny Cash, walks the line.
 

 CONCLUSION
 

 ¶ 30. We hold summary judgment is proper on the McGintys' negligence claim. Therefore, we affirm the Court of Appeals and the trial court regarding the negligence claim. Further, we hold summary judgment is not proper for the McGintys' breach-of-implied-warranty claim. Therefore, we affirm the Court of Appeals and reverse the trial court regarding the breach-of-implied-warranty claim. Lastly, we remand for further proceedings.
 

 ¶ 31.
 
 THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.
 

 RANDOLPH AND KITCHENS, P.JJ., KING AND COLEMAN, JJ., CONCUR. BEAM, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J. MAXWELL AND ISHEE, JJ., NOT PARTICIPATING.
 

 Dianne McGinty's name for the case filing is spelled "Diane." However, her deposition provided the spelling is "Dianne."
 

 The trial court explained that, prior to Hurricane Katrina, LB's Steakhouse was located in Gulfport, not Biloxi.
 

 After we granted certiorari, Caesars Entertainment Operating Company, Inc., including its affiliate Grand Casinos of Mississippi, Inc., filed for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court for the Northern District of Illinois. On February 17, 2015, this Court stayed the appeal pursuant to
 
 11 U.S.C. § 362
 
 (a). On January 23, 2018, this Court lifted the stay for purposes of this appeal, based upon an agreed order entered by the bankruptcy court.
 

 While Grand Casinos argued the content of the letter was wholly insufficient for summary-judgment purposes, the form of the letter, as summary-judgment evidence, was not specifically objected to. Therefore, we refrain from considering whether it constitutes proper summary-judgment evidence, as the content of the evidence-the treating physician's opinion-could be admissible at trial,
 
 if properly presented
 
 .
 
 Illinois Cent. R. Co. v. Jackson
 
 ,
 
 179 So.3d 1037
 
 , 1043 (Miss. 2015) ("To be exact, the content of summary-judgment evidence must be admissible at trial although the evidence may be in a form, such as an affidavit, that would not be admissible."). In other words, we offer no opinion as to admissibility of the document as to form, because without Grand Casino's objection to the form,
 
 it is waived
 
 .
 

 The opinion is not clear whether the claim was negligence or a breach of the implied warranty.
 

 We think it pertinent to point out that, while the Mississippi District Court cases cited
 
 infra
 
 were faced with summary judgment motions, the Supreme Court cases addressed evidence presented at trial. Therefore, the summary judgment burden and lack of objection to the form, as is the case here, was not an issue.
 

 In 1934, the Court held: "That a can opener and ice pick, used in store to open cans and to remove contents and left exposed when not in use, could be contaminated by bacteria is so well known that
 
 judicial notice may be taken
 
 of the fact."
 
 Cudahy Packing Co. v. Baskin
 
 ,
 
 170 Miss. 834
 
 ,
 
 155 So. 217
 
 (1934) (emphasis added).
 
 McMillain
 
 relied on
 
 Baskin
 
 in its holding.
 
 McMillain
 
 , 155 So. at 219.
 

 The
 
 Doss
 
 Court stated, "The only other evidence presented in support of plaintiffs'
 
 negligent preparation claim
 
 is the statement by one of the plaintiffs that she identified something red in her chicken wings during consumption that she believed to be blood."
 
 Doss
 
 ,
 
 2011 WL 754891
 
 , at *2 (emphasis added).